

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-22-1994

# Bernardsville Bd. of Ed. v. J.H., et al.

Precedential or Non-Precedential:

Docket 93-5767

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Bernardsville Bd. of Ed. v. J.H., et al." (1994). *1994 Decisions.* Paper 197.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/197

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 93-5767

————

BERNARDSVILLE BOARD OF EDUCATION

<u>Appellant</u>

vs.

J. H., Individually and on behalf of their minor son
J.H.; E. H., Individually and on behalf of their minor
son, J.H.; J. H., Individually

————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 92-cv-03694)

————

Argued
August 8, 1994
Before:  MANSMANN, COWEN and McKEE, <u>Circuit</u> <u>Judges</u>.

(Filed November 22, 1994)

————

Nathanya G. Simon, Esquire (ARGUED)
David L. Rosenberg, Esquire
Schwartz, Simon, Edelstein,
  Celso & Kessler
293 Eisenhower Parkway
Suite 300
Livingston, NJ  07039

  COUNSEL FOR APPELLANT

Theodore A. Sussan, Esquire (ARGUED)
Staci J. Greenwald, Esquire
Sussan & Greenwald
407 Main Street
Spotswood, NJ  08884

  COUNSEL FOR APPELLEES

————

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Through the exercise in "cooperative federalism" which is the hallmark of the implementation of the Education of the Handicapped Act, 20 U.S.C. §§ 1400 et seq., now known as the Individuals with Disabilities Education Act, local school boards are mandated to provide a free, appropriate public education for handicapped children alongside their peers who are not so impaired. The Act authorizes federal assistance to states and localities for educational programs which confer an educational benefit on disabled students. The Bernardsville School District receives an allocation of funds under this Act and thus incurs the responsibility to confer an educational benefit on learning disabled students enrolled in a public school within its jurisdiction.

J.H., the child who is the subject at the heart of this case, was denied the benefit of a free appropriate public education throughout his several years as an elementary school student within the Bernardsville School District. Year after year the School District failed to design an Individualized Educational Program suitable to J.H.'s special needs, and failed to intervene responsibly in his quite apparent trend of academic and social deterioration. Observing their son's educational predicament and dissatisfied with the school program in Bernardsville, J.H.'s parents unilaterally removed J.H. from the School District and enrolled him in a private out-of-state residential school, where J.H. improved significantly under a program responsive to his needs. More than two years later,

J.H.'s parents sought reimbursement from the Bernardsville School District for tuition and expenses for J.H.'s private education. J.H.'s parents argued that Bernardsville was by law obliged to provide J.H. with a free appropriate public education, that it failed utterly in this regard, and that they were virtually forced to enroll J.H. in an out of district school in order to ensure him an appropriate educational benefit. The Act and the implementing regulations offer no guideline with regard to the timeliness of this claim for retroactive reimbursement.

We must decide whether J.H.'s parents requested due process for their son within an appropriate time limitation. Notwithstanding an acknowledgement of good cause for the frustration of J.H.'s parents and the reasonableness of their educational decision, we conclude that the request for reimbursement for the first two years after J.H. was removed from Bernardsville and enrolled in a private institution was untimely. We will award reimbursement only for J.H.'s third year of private education and for partial attorney's fees.

I.

J.H. entered the Bernardsville School District in September, 1980, after he had completed kindergarten at a parochial school and it had become apparent that his academic progress was not commensurate with the other children in his class. In the Bernardsville School District, J.H. repeated kindergarten, at the end of which it was again apparent that J.H.'s academic skills were significantly deficient and that he

had not progressed much during the academic year. By November of academic year 1981-82, while J.H. was in the first grade, J.H.'s parents still observed a lack of progress in their son, and hired a private tutor for reading and math once a week. In January, 1982, a private learning consultant advised Mr. and Mrs. H. that J.H. required one-on-one academic assistance. In January, 1982, the Bernardsville School District, also well aware of J.H.'s academic difficulties, referred J.H. to their Child Study Team,[1] and on April 8, 1982, classified J.H. as perceptually impaired. The District placed J.H. in a small resource room reading and math group, and mainstreamed J.H. for other subjects. J.H. also attended summer school in the Bernardsville school district after completing the first grade.

J.H. remained in resource room instruction in the Bernardsville school through the end of the third grade, showing

---

[1]. The Bernardsville elementary school's referral for evaluation in J.H.'s case listed the following specific reasons for referral:

> 1. [J.H.] is very inattentive unless its a one to one situation.
>
> 2. He often fails to respond when his name is called.
>
> 3. We are concerned that there may be an articulation problem. There are many words he cannot pronounce.
>
> 4. His answers to questions are often inappropriate.
>
> 5. He cannot work independently.

A. 2095-96.

very limited progress and great difficulty keeping academic pace with his peers. The Individualized Educational Program (IEP) reports created by the Bernardsville district for the years 1982–83, 1983–84 and 1984–85, as well as Bernardsville's psychological evaluations of J.H., attest to J.H.'s lack of academic progress and a disturbing deterioration in his confidence, self-esteem and social interaction with peers. The district court found that academic frustration and social isolation marked J.H.'s education experience in Bernardsville.

As early as October of 1982, J.H.'s resource room teacher, Mrs. Garland, recorded Mrs. H.'s "persistent anxiety" regarding the efficacy of the IEP. Mr. Walter Mahler of the Bernardsville Child Study Team was also apprised in 1982 of an audiological evaluation and assessment of central auditory functioning performed by a private neurologist, which revealed that J.H. was experiencing significant difficulty with auditory figure-ground discrimination ability,[2] auditory closure ability[3] and appeared also to suffer with auditory memory deficits.[4] A.

---

[2]. The report, which was done through St. Clare's Hospital, indicates that auditory figure ground discrimination deficits may manifest as inability to communicate in an environment of background noise. Communication difficulties may be circumvented if optimal listening conditions, including a quiet room with few distractions, are provided for learning. A. 2127.

[3]. Auditory closure deficits cause difficulty in blending sounds and manifest as reading, spelling and articulation problems. A. 2128.

[4]. Auditory memory deficits may manifest as problems with following verbal instructions, reading comprehension and other verbal abilities. A. 2128.

2126-2128. That report recommended optimal listening conditions for J.H. in order to enhance his academic development. The report recommended specifically a quiet learning room with few distractions, preferential seating in a classroom, eliciting frequent feedback from J.H., certain speech and common memory training techniques, and counseled against a phonetics approach to reading. Phonetics was nevertheless emphasized in J.H.'s IEPs for reading.[5] Moreover, Mrs. H. testified before the administrative law judge that J.H.'s resource room was not reasonably free from background noise which could sabotage efforts to educate this attention deficit child.

In academic year 1986-87, at the end of J.H.'s sixth grade, his reading level, as measured by the Woodcock Johnson Psychoeducational Battery, had only progressed from 1.0 in the first grade to 2.9. Notwithstanding J.H.'s lack of success in prior years, the IEP provided by the district for the 1987-88 school year, J.H.'s grade 7, was virtually identical to the prior unsuccessful IEPs. Dr. Howard Margolis, testifying as an expert on behalf of J.H. at trial, characterized J.H.'s placement as

_____

[5]. Dr. Margolis, Ed.D., Reading and Special Education Consultant, in testimony before the administrative law judge and in a written evaluation report on J.H.'s educational program prior to his enrollment at Landmark, A. 2561 et seq., concluded that Bernardsville maintained a phonetics approach to reading year after year despite its inappropriateness given J.H.'s handicapping condition. A. 2572. The administrative law judge was persuaded by Dr. Margolis' findings and conclusions, and specifically found that J.H.'s reading program deprived J.H. an opportunity to acquire reading skills. The district court endorsed the determination of the administrative law judge, specifically noting the inappropriateness of the reading program.

inappropriate and not reasonably calculated to confer educational benefit on J.H.

In September of 1987, J.H.'s parents unilaterally removed J.H. from the Bernardsville school system and placed him at the Landmark School in Massachusetts, a residential school for handicapped children. J.H. attended school at Landmark for academic years 1987-88 through 1989-90, J.H.'s grades 7, 8 and 9. In December of 1987 and November of 1988, at the request of J.H.'s parents, the Bernardsville District conducted educational assessments of J.H., but never approved J.H.'s placement at Landmark.

In September of 1989, after J.H. had been in attendance at Landmark for more than two years, the parents of J.H. petitioned for an administrative hearing concerning J.H.'s placement and program from September 1987 to his current situation, and sought retroactive reimbursement for J.H.'s out-of-district residential schooling at Landmark. The Board of Education denied J.H.'s parents' request for reimbursement and defended their proposed IEP for academic year 1987-88. J.H.'s parents filed a new request for an administrative hearing on November 17, 1989.

Between November and December of 1989, the parties negotiated and reached various agreements, and the matter did not proceed to a hearing at that time. The parties agreed that Deputy Public Advocate for the State of New Jersey, David Harris, would provide a release for Bernardsville to obtain the current records of J.H., that J.H. would be evaluated by the

Bernardsville Child Study Team on December 22, 1989, that in early January, 1990, the Bernardsville school psychologist would visit Landmark to observe and evaluate J.H., that a meeting would be held to discuss the recommendations of the Child Study Team and that, if necessary, due process procedures could be activated.

Pursuant to the agreement, the Child Study Team did conduct a reevaluation of J.H. in order to develop an appropriate IEP. On April 11, 1990, Lynn Caravello, Ed.D., Director of Special Services, advised J.H.'s parents that a new IEP had been developed for J.H. and recommended that J.H. be placed in the Bernards High School as a ninth grader eligible for part-time special education.

In May of 1990, J.H.'s parents removed J.H. from the eighth grade at Landmark and reenrolled him in the Bernardsville School. Bernards High School implemented the newly developed IEP for the balance of the 1989-90 school year, and appeared to be responsive to Dr. Margolis' revisional recommendations for the 1990-91 academic year.

On September 4, 1990, Mr. H. authorized J.H.'s placement in Bernards High School conditioned upon pending agreement on the IEP, and "upon agreement by the Bernardsville Board of Education that such placement [would] not thereby become the current educational placement of [J.H.] within the meaning of federal or state statutes and regulations pertaining to special education." J.H. in fact completed the 1990-91 academic year as a tenth grader at Bernards High School.

On January 4, 1991, J.H.'s parents through their attorney filed a request for due process and for the matter to be transmitted to the office of administrative law for trial. The petition contended that the Bernardsville Board of Education had offered an inappropriate program for J.H. through June of 1987, forcing J.H.'s parents to place J.H. at the Landmark School so as not to deprive him of his statutory right to a free appropriate public education. The petition alleged among other things that the IEPs prepared by the Board of Education prior to J.H.'s enrollment at Landmark did not comply with the requirements of New Jersey Administrative Code 6:28-3.6 in that they were not reasonably calculated to confer any educational benefit upon J.H., and did not contain specific or measurable goals or instructional objectives. The petition requested reimbursement for all monies expended on behalf of J.H. relative to his placement at the Landmark school commencing in the summer of 1987 through May of 1990. The matter was forwarded to the Office of Administrative Law on January 16, 1991, and hearings began on February 19, 1991.

On June 24, 1992, the administrative law judge decided the case against the Bernardsville Board of Education, ordering reimbursement to the parents of J.H. for Landmark tuition expenses for the academic years 1987-88 through 1989-90, excluding the cost of J.H.'s room and board. Decision of Administrative Law Judge, OAL Dkt. No. EDS 576-91 (June 24, 1992), A. 24-50. In pertinent part, the administrative law judge found:

The [IEPs] were not compliant with the New Jersey Administrative Code as it then existed and, did not enable J.H. to receive either an appropriate education, or to best achieve educational success.[6]  Specifically, J.H.'s IEP's were severely lacking in adequate statements of current educational status, the annual goals were vague, non-specific and incapable of being measured, and repeated themselves, for the most part, in each succeeding year.

The IEP's . . . did not enable J.H. to improve in any meaningful way in his reading . . . .

Despite parental concern and intervention through regular contact and communication with the District and the hiring of tutors, J.H.'s lack of progress in reading caused him to suffer emotionally, and significantly affected his self-esteem.

---

[6].     The administrative law judge recognized that prior to May 15, 1989, the New Jersey standard for a free appropriate public education reflected in N.J.A.C. 6:28-2.1(a), was an education that would allow a handicapped child to best achieve success in learning.  Geis v. Board of Education, 774 F.2d 575, 582 (3d Cir. 1985).  A. 47.  The Court further acknowledged that subsequent to May 15, 1989, the New Jersey Department of Education rejected the Geis standard in favor of the federal standard set forth in the Education For All Handicapped Act, 20 U.S.C. § 1400 et seq., which was defined as an education which merely confers educational benefit on a handicapped person.  The 1989 amended N.J.A.C. 6:28-1.1 specifically provides that New Jersey is obliged to ensure that all educationally disabled pupils "have available to them a free, appropriate public education as that standard is set under the [federal Act]," 20 U.S.C. § 1400 et seq.  (Emphasis added.)  See Board of Education v. Rowley, 458 U.S. 176 (1982).

The administrative law judge determined that for all the relevant time periods, including 1982 through May 15, 1989, the standard set forth in Geis was operative, and found that under the more stringent local standard, the Bernardsville Board of Education failed to comply with the procedural requirements of N.J.A.C. 6:28-1.1.  A. 48.

As a result, J.H. had significant problems with his peers and socialization . . . .

Although one-to-one instruction in reading was recommended by independent evaluations . . . with little exception, the same was not offered to J.H. . . . .

The program offered to J.H for seventh grade . . . was a continuation of prior programs which did not address J.H.'s handicapping condition.

Petitioners were justified in seeking a free, appropriate public education under the circumstances recognizing that J.H.'s reading handicap was not being addressed.

. . . [P]etitioners [sic] decision to enroll [J.H. in the Landmark School] was reasonable. The program at Landmark School was appropriate for J.H. to meet his needs, and offered the best opportunity to enable J.H. to achieve educational success and benefit from his education.

OAL Dkt. No. EDS 576-91, pp.19-20; A. 42-43.

The Bernardsville Board of Education appealed the matter to the United States District Court for the District of New Jersey on September 2, 1993 pursuant to 20 U.S.C. § 1415(e)(2).[7] <u>Bernardsville Board of Education v. J.H.</u>, Civil No. 92-3694 (D.N.J. March 22, 1993). The parents of J.H. moved for

_____

[7]. Section 1415(e)(2) provides in pertinent part:

Any party aggrieved by the [administrative] findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. . . .

summary judgment on the ground that the Board of Education's appeal was untimely under 20 U.S.C. § 1415(e)(2).  Following the opinion of this circuit in Tokarcik v. Forest Hills School District, 665 F.2d 443, 450-54 (3d Cir. 1981) (30-day state limitation statute for state administrative appeals to state courts does not apply to federal claim brought in federal court under Education of Handicapped Act), cert. denied, 458 U.S. 1121 (1982), the district court dismissed J.H.'s parents' summary judgment motion.  The district court denied the Board of Education's cross-motion for summary judgment brought on the ground that J.H.'s parents waived their right to reimbursement by unilaterally placing J.H. in Landmark and failing to initiate review proceedings prior to seeking reimbursement.  The district court also denied the Board of Education's alternative argument for summary judgment that J.H.'s parents failed to comply with the 90-day statute of limitations contained in N.J.A.C. 6:24-1.2(c), which the Board argued should be applied to challenges to IEPs.  The court noted that the New Jersey Administrative Code does not contain any explicit time limitation within which a party must request a due process hearing in the special education context, and no caselaw has held that the 90-day time limit would be applicable.

Prior to trial, on September 9, 1993, the district court ruled on the parties' motions in limine.  J.H.'s parents had filed a motion seeking to limit the testimony of two expert witnesses for the Board of Education, Joanne Seelaus, school psychologist and Supervisor of Special Education, and Dr. Lynn

Caravello, Director of Special Services for the Bernardsville Board of Education. Seelaus and Caravello had prepared a joint report which contained references to the IEP prepared for J.H. for the 1987–88 school year, references to testimony previously given during the administrative hearing, and references to the reevaluation of J.H. preparatory to his return to the district in 1990. The court excluded these portions of their testimony on the ground that such evidence would have been cumulative and improper "additional evidence" pursuant to 20 U.S.C. § 1415(e)(2),[8] and with regard to that portion of the report discussing J.H.'s anticipated return to Bernardsville in the fall of 1990, that it would have been irrelevant to the request for reimbursement for tuition from 1987 through the spring of 1990.

The district court also granted the Board of Education's motion to preclude J.H.'s parents from testifying at the hearing about issues that they had already or could have addressed at the administrative proceeding.

The court ruled on the merits of the appeal on November 15, 1993, after conducting a de novo review of the state administrative decision. Affording the administrative law judge

---

[8]. Section 1415(e)(2) provides in pertinent part:

> . . . In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

due deference in consideration of a perceived expertise on the part of the administrative agency to articulate state educational policy, and with respect to the administrative law judge's credibility determinations, the district court concluded that the Bernardsville School District failed to confer upon J.H. even the minimally satisfactory educational benefit under the least stringent standard which could arguably have been applied. The district court concluded that the IEPs developed for J.H. during the relevant school years were not reasonably calculated to confer an educational benefit. After an independent examination of the record, the district court affirmed the administrative law judge's specific findings, including that the IEPs did not contain adequate statements of current educational status or measurable annual goals, were virtually redundant from year to year and hence unresponsive to J.H.'s apparent difficulties, and that Bernardsville failed to offer J.H. adequate one-to-one instruction. The district court held that Bernardsville failed to sustain its burden of proof to show by a preponderance that its IEPs provided J.H. with a free, appropriate, public education, and further held that the Landmark placement was appropriate.

On equitable considerations and on the power conferred on the district court by 20 U.S.C. § 1415(e)(2) to "grant such relief as the court determines is appropriate," the district court awarded J.H.'s parents retroactive reimbursement of Landmark School tuition, exclusive of room and board, for academic years 1987-88 through 1989-90, affirming the order of

the administrative law judge.  The court further designated

J.H.'s parents as the prevailing party for purposes of awarding

attorney's fees and costs pursuant to 20 U.S.C. § 1415(e)(4)(B),[9]

but left open the determination of the specific calculation of

reasonable fees.  By order of the court on February 2, 1994, the

award of attorney's fees was set in the amount of $91,494.85.

Pursuant to 28 U.S.C. § 1291, on December 14, 1993, the

Bernardsville Board of Education timely appealed the final order

of the district court of November 15, 1993, which affirmed the

decision of the administrative law judge, and from the February

2, 1994, order of the district court awarding attorney's fees.[10]

The Board of Education also appealed the two interlocutory

---

[9].      Section 1415(e)(4)(B) provides:

> In any action or proceeding brought
> under this subsection, the court, in its
> discretion, may award reasonable attorneys'
> fees as part of the costs to the parents or
> guardian of a handicapped child or youth who
> is the prevailing party.

[10].     Although Bernardsville's notice of appeal explicitly
specifies only the district court's November 15, 1993 order and
opinion, we construe the notice as incorporating the unspecified
February 2, 1994 order quantifying the attorneys' fees award.
Because the November order designates the prevailing party for
purposes of attorneys' fees, we recognize an adequate connection
between it and the February 2 order for purposes of extending our
jurisdiction over the latter, given that the subsequent appellate
proceedings manifest the appellant's intent to appeal the
attorneys' fees issue.  Importantly, here the opposing party had
and exercised a full opportunity to brief the issue and did not
raise any claim of prejudice.  A copy of the district court's
February 2 order and opinion setting the attorneys' fees was also
attached to the appellant's brief.  See Williams v. Guzzardi, 875
F.2d 46, 49 (3d Cir. 1989) (and cases cited therein).

opinions denying its motion for summary judgment and excluding the testimonies of two witnesses.

## II.

Upon an examination of the record on appeal, we are confident that the district court properly ruled that, under any arguably appropriate legal standard, the Bernardsville Board of Education failed to establish by a preponderance that its program and placement for J.H. assured him a free, appropriate, public education as required under the Education of the Handicapped Act, 20 U.S.C. § 1412(1).[11]  The record bespeaks an appalling failure

---

[11].	The Education of the Handicapped Act, 20 U.S.C.§ 1400 et seq., now known as the Individuals With Disabilities Education Act ("IDEA"), provides federal financial assistance to states and local agencies for the education of handicapped children, provided that the state can demonstrate that it "has in effect a policy that assures all children with disabilities the right to a free appropriate public education."  20 U.S.C.§ 1412(1).  In Board of Education v. Rowley, 458 U.S. 176, 200-04 (1982), the Supreme Court held that the Federal Act requires state or local school districts to provide a program designed to confer an educational benefit on the child.

The state of New Jersey implements the Federal Act through state statute and regulations promulgated by the New Jersey State Board of Education.  N.J.S.A. §§ 18A:46-1 through 18A:46-46.  Until May 15, 1989, New Jersey law established a higher standard for local school boards than the Act mandates, requiring not only that the program be designed to confer an educational benefit, but that the program be designed to permit the child to best achieve success in education.  N.J.A.C. § 6:28-2.1 (1978).  See Geis v. Board of Education, 774 F.2d 575, 582-83 (3d Cir. 1985).  Furthermore, New Jersey statutes set forth in detail the specific requirements for each Individualized Education Program.  N.J.A.C. §§ 6:28-3.6; 6:28-1.1 et seq.

Because we agree with the district court that the Board of Education failed under either standard, we need not address the parties' contentions as to which standard applies.

on the part of the education bureaucracy to develop and implement an appropriate IEP.  We will not belabor this point.  We turn our attention directly to the question of the timeliness of J.H.'s parents' request for reimbursement.

A.

The Bernardsville Board of Education contends that J.H.'s parents' more than two year delay in commencing the review process renders their claim ineligible for reimbursement for any portion of the private tuition in question.  The Board cites a number of cases in which parents have been awarded prospective private school tuition and/or expenses incurred while a challenge to the student's IEP was pending through administrative review to support its position that parents must <u>commence</u> the review process in order to be entitled to relief.[12]  <u>See, e.g.</u>, <u>School Committee of Burlington v. Department of Education</u>, 471 U.S. 359, 370 (1985) (Act authorizes prospective injunction and

---

[12].     Caselaw qualifies 20 U.S.C. § 1415(e)(3), which provides:

> During the pendency of any proceedings . . ., unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child . . . .

Authorization for a judicial grant of retroactive reimbursement for interim unilateral placements ultimately proven to be reasonable and appropriate, where the IEP is adjudged inappropriate, is justified under the court's equitable powers to grant appropriate relief under 20 U.S.C. § 1415(e)(2).

reimbursement for appropriate unilateral private placement during interim pending review of public placement later adjudged inappropriate); Lascari v. Board of Education, 116 N.J. 30, 50, 560 A.2d 1180 (1989) (parents may be reimbursed for private school tuition during pendency of any proceeding which determines that the district's IEP was inappropriate); Garland Independent School Dist. v. Wilks, 657 F. Supp. 1163, 1167 (N.D. Tex. 1987) (parent not entitled to tuition reimbursement incurred prior to bringing dissatisfaction with district's IEP to school district's attention); Lewisville Independent School District v. Brooke P., 16 EHLR 1313, 1315-16 (E.D. Tex. 1990) (parents' failure to request due process hearing constitutes waiver of right to reimbursement for cost of extended school year services prior to initiation of due process proceedings, but court ordered prospective injunction against school district); but cf. Northeast Central School Dist. v. Sobol, 170 A.D.2d 80, 85-87, 572 N.Y.S.2d 752, 755-57 (N.Y. App. Div. 1991) (the ability to order retroactive reimbursement within the statutory context and public policy is necessary to ensure a child's right to a free, appropriate, public education). Thus, Bernardsville argues that reimbursement for J.H.'s private placement prior to commencement of review proceedings is not warranted in this case, and that the district court erroneously denied the Board of Education's motion for summary judgment.

J.H.'s parents assert that the caselaw in this area does not explicitly, or necessarily by inference, preclude pre-proceedings reimbursement; they argue that costs incurred

subsequent to their expressions of dissatisfaction with J.H.'s IEP, before they officially commenced a review, should be reimbursed. J.H.'s parents informed the Board of Education of their concerns regarding J.H.'s program and placement in August of 1987 and requested placement at Landmark. The Board denied that request, but since at least that time the Board was arguably on effective notice of the IEP's inadequacy and the Board's potential liability to J.H.'s parents. Furthermore, the Board's annual monitoring of J.H.'s program and progress while at Landmark served to keep the Board on notice for the duration of J.H.'s out-of-district enrollment.

J.H.'s parents' argument is not without merit. The fact that here the regulations do not specify a time limitation within which to bring a due process hearing, as well as the very nature and social significance of the education of children with disabilities, incline us to equitable considerations. The fact that the school district was notified of the parents' dissatisfaction, albeit not through the initiation of official proceedings, from the very first summer that J.H. attended Landmark, that the parents did request a new placement for J.H., and that there was continued contact between the school district and J.H. for the duration of J.H.'s enrollment at Landmark support Mr. and Mrs. H's argument. There is no evidence whatsoever that J.H.'s parents acted in bad faith, and given the apparent severe deficiencies in the IEPs developed for J.H. at Bernardsville, it is clear that J.H.'s parents acted reasonably in securing an appropriate education for their son outside the

district.  At the time J.H. left Bernardsville, the IEP developed for him was both procedurally and substantively inadequate, and it is untenable for the school district to maintain the argument that it was not aware of a problem with the IEP it offered, virtually unmodified, to J.H. year after year despite his lack of academic progress, and in the face of his social regression.  We do not hesitate to affirm the right to reimbursement for private tuition incurred from a unilateral enrollment during the pendency of any proceeding if it is ultimately determined that the IEP in question was inappropriate.  See Burlington, 471 U.S. at 370, and related cases cited above.

Nevertheless, here, where proceedings were initiated more than two years after J.H.'s transfer, we must place into our equation the practical opportunity afforded the school district to modify its IEP or to determine definitively whether expenditures occurred outside the district could have been obviated by the filing of a prompt complaint.  We are cognizant of the fact that the school district serves a very large student population, and in light of the numerous contacts it has with parents seeking the individual welfare of their respective children, mere notice of parental "dissatisfaction" does not alone put the Board on reasonable notice that the parents will challenge a particular IEP in the future and seek reimbursement for an interim unilateral placement in a private institution. Absent initiation of review proceedings within a reasonable time of a unilateral decision to transfer a child to a private institution, a school district would not know to continue to

review and revise an IEP, and the court would be left to hazard conjecture or hypothesis as to what the Board of Education might have proposed if it had been informed of the parents' continued intent to pursue an appropriate education for their child within the school district. We, of course, recognize that the school district has the duty in the first instance to provide an appropriate IEP, and moreover, to demonstrate by a preponderance at a due process hearing that the IEP it offered was indeed appropriate. With that foremost in mind, we must nevertheless also recognize that as a practical reality, and as a matter of procedural law[13] of which J.H.'s parents were fully apprised, the right of review contains a corresponding parental duty to

---

[13]. The IDEA, 20 U.S.C. § 1415(b)(1)(E), requires that the state or local agency receiving federal funds under the Act provide a grievance process with regard to the placement and programs offered to any child. Section 1415(b)(2) requires that the state or appropriate state agency provide parents who have filed a complaint the opportunity for an impartial due process administrative hearing. Section 1415(e)(2) provides for appeal from the decision of such a hearing to any state court of competent jurisdiction, or to a United States district court without regard to amount in controversy.

New Jersey implements the IDEA with extensive statutory and regulatory provisions designed to provide any parent who believes that his or her child is being or has been denied the rights secured by IDEA an opportunity for mediation and an impartial due process administrative hearing. N.J.S.A. 18A:46-1-46 and N.J.A.C. 6:28-1-11. The New Jersey Administrative Code requires that parents be sent a copy and explanation of all procedures pertaining to the IDEA and the New Jersey Code. N.J.A.C. 1:6A-2.1 et seq.

It is undisputed that in 1987 J.H.'s parents received this information regarding the proper steps to invoke the administrative review process, but delayed invoking their rights to any part of the administrative process until more than two years after unilaterally placing J.H. at Landmark.

unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought. We think more than two years, indeed, more than one year, without mitigating excuse, is an unreasonable delay.[14] We will vacate the district court's November 15, 1993

---

[14]. We concur largely with the dissent, except, of course, on the critical issue of whether the Act implicitly can recognize a duty on the part of the parents to place in question the appropriateness of the IEP within a reasonable time of the year for which they seek reimbursement. We certainly agree that the handicapped child's education is an interest both of the parents and of the district, and that here the parents' decision to withdraw J.H. was reasonable. Nevertheless, we believe that the provisions of the Act can only be effectively and fairly implemented if we recognize that the interest of both the parents and the district on behalf of the child bear a corresponding respective duty -- on the district to develop and justify its IEP, and on the parents to unambiguously challenge the IEP when they think it inappropriate. We think this allocation of burdens comports fully with the Act and the relevant implementing regulations.

We note, as does the dissent, that given the Act's lack of specificity on the question of timeliness and the nature of the issue here, a balancing of the equities is unavoidable. We resort to the standard of reasonableness under the circumstances, and a consideration of mitigating circumstances for any delay in the initiation of review proceedings which might otherwise be deemed unreasonable. Our disagreement with the dissent is over the questions of whether the unmitigated delay here was reasonable, and, perhaps more dispositive, whether the district was placed on reasonably adequate notice of the parents' intention to seek reimbursement.

We wish to clarify that our weighing of the equities was not unduly influenced by the isolated fact that the district must cope with a large student population, as the dissent perhaps implies, although we believe that this fact has relevance to the question of what constitutes reasonably adequate notice in these particular circumstances. We agree with the dissent, however, that the Act imposes the same duty to provide a free, appropriate education to a child in a large urban district as it does to a child in a small urban community.

order directing Bernardsville to reimburse Mr. & Mrs. H. for tuition at Landmark to the extent it covers school years 1987-88 and 1988-89.[15]

B.

The issue of retroactive reimbursement for the school year 1989-90 requires closer scrutiny of the equities. At the beginning of the 1989-90 academic year, J.H.'s parents sought an administrative hearing regarding J.H.'s placement and began intensive negotiations with Bernardsville resulting in a reentry of J.H. in a newly developed IEP within the district shortly before that academic year expired. J.H.'s parents subsequently continued actively to pursue the review process, and ultimately requested a due process hearing for retroactive reimbursement in the middle of academic year 1990-91. Thus from the beginning of 1989-90, J.H.'s parents set in motion the firm steps which fairly notified the school board that retroactive liability was a possibility and afforded the board a fair opportunity to revise its IEP for J.H.

The Board of Education asserts that the district court was constrained to dismiss even the reimbursement request for 1989-90 as time-barred pursuant to the 90-day rule set forth in N.J.A.C. 6:24-1.2. That provision provides in relevant part:

---

[15]. Because the circumstances here make this case merely analogous to the caselaw upon which the Board of Education relies, the district court properly denied the Board of Education's motion for summary judgment based on the parents' late initiation of review proceedings.

(a)  To initiate a contested case for the
Commissioner's determination of a controversy
or dispute arising under the school laws, a
petitioner shall serve a copy of a petition
upon each respondent . . . .
*  *  *

(c)  The petitioner shall file a petition no
later than the 90th day from the date of
receipt of the notice of a final order,
ruling or other action by the district board
of education, individual party, or agency,
which is the subject of the requested
contested case hearing.

The Board of Education cites a number of cases in which the 90-day rule has been applied in the education context.  See North Plainfield Education Assoc. v. Board of Education, 96 N.J. 587, 594, 476 A.2d 1245 (1984) (because award of teacher salary scale increment is not statutory right, it is subject to 90-day time bar); Riely v. Board of Education, 173 N.J. Super. 109, 113-14, 413 A.2d 628 (App. Div. 1980) (teacher's petition of appeal with Commissioner of Education concerning reinstatement time-barred by 90-day rule, and pendency of arbitration does not relieve compliance with 90-day rule); Lombardi v. Board of Education, OAL Dkt. No. EDU 6808-86 (January 30, 1987) (Commissioner of Education); Markman v. Board of Education , OAL Dkt. No. EDU 0317-86 (August 22, 1986) (Commissioner of Education).

In addition to citing arguably supporting caselaw, the Board of Education contends that the scheme of the New Jersey Code also compels application of the 90-day rule.  The Board cites N.J.A.C. 1:6 A-1.1, which provides:
The rules in this chapter shall apply to
the notice and hearing of matters arising out
of the Special Education Program of the

> Department of Education, pursuant to N.J.A.C.
> 6:28. Any aspect of notice and hearing not
> covered by these special rules shall be
> governed by the Uniform Administrative
> Procedure Rules (U.A.P.R.) contained in
> N.J.A.C. 1:1 . . . .

N.J.A.C. 1:1-3.1 provides:

> A contested case shall be commenced in
> the State agency with appropriate subject
> matter jurisdiction. A contested case may be
> commenced by the agency itself or by an
> individual or entity as provided in the rules
> and regulations of the agency.

The appropriate state agency here is the Commissioner of Education. N.J.A.C. 6:24-1.2 is the code provision which limits the time within which a parent may seek a hearing before an administrative law judge for the Commissioner of Education. Thus the Board argues that N.J.A.C. 6:24-1.2(c), which sets forth the 90-day rule, mandated that J.H.'s parents file a petition with the Commissioner within 90 days from receipt of the disputed IEP, and that their delay results in a time-bar from all relief.

We have already decided that a mere expression of dissatisfaction with a proposed IEP and placement is not sufficient to guarantee retroactive reimbursement for the cost of a reasonable unilateral placement, even where the IEP is ultimately found to have been inappropriate. Even a liberal understanding of the operative policies of the IDEA cannot obviate the practical necessity for a reasonable timeframe for filing due process claims. Nevertheless, we find no precedent for applying the 90-day rule to special education matters, though undoubtedly that limitation applies to disputes arising under

school laws other than special education matters.  The district court accurately noted that the rules which expressly pertain to special education do not contain a time limit, and no caselaw has adopted the 90-day rule in the context of the IDEA.  The district court correctly rejected the 90-day rule here.

Under the facts of this case in light of all the equities, recognizing the operative policies of the IDEA and acknowledging all relevant statutes and regulations, we believe that J.H.'s parents adequately placed in issue their dissatisfaction with J.H.'s IEP for purposes of reimbursement at the time they requested an administrative hearing in September of 1989.  Due process procedures were not activated at that time only because the parties were attempting to negotiate a settlement.  A formal request for due process was eventually made when it became apparent that a resolution could not otherwise be negotiated.  Although we cannot award compensation for Bernardsville's past failure to provide J.H. a free appropriate public education, we believe substantial justice can be achieved by awarding reimbursement for tuition costs incurred while in attendance at Landmark for the 1989-90 academic year.  We will affirm the district court's award of reimbursement tuition costs for the 1989-90 school year, excluding the costs associated with room and board.[16]

_____

[16].      We reject the Board of Education's argument that reimbursement for academic year 1989-90 should be precluded on the ground that it was incapable of formulating a timely IEP for that year, given the unilateral action of J.H.'s parents. Bernardsville's long history with J.H. and its continued contact with him and educational assessments of his progress after the

III.

In light of the IDEA, 20 U.S.C. § 1415(e)(4)(B), which provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party," and consistent with our holding, we must vacate the district court's February 2, 1994 order awarding full attorneys' fees in the amount of $91,494.85. We find, however, that the district court was correct in its rejection of the Board of Education's contention that the court should disallow those fees associated with J.H.'s parents' motion for summary judgment pertaining to a statute of limitations issue on appeal. We find that counsel for J.H. has made "a good-faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary," and has exercised sound billing judgment as required in Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (citing Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)). We also find that the district court did not err in its acceptance of the $235 hourly billing rate charged by counsel for J.H. as reasonable in light of comparable prevailing rates.

Furthermore, we agree with the district court that the award of fees should not be reduced to reflect J.H.'s counsel's

(..continued)
unilateral act belie this contention. Under a just and proper consideration of the equities and the court's discretionary power to grant "appropriate" relief, which includes a qualified power to grant retroactive reimbursement, we are convinced of the appropriateness of an award for the 1989-90 year.

partial success by virtue of the district court's refusal to award reimbursement costs for room and board as requested. The issue of reimbursement for residential costs involved a "common core of facts" relative to the issue of tuition reimbursement, was based on "related legal theories," and cannot be viewed as a discrete claim capable of disassociation from the tuition claim for purposes of awarding attorneys' fees. Id. at 435. Nevertheless, since J.H. has failed to prevail on his claim for reimbursement costs for academic years 1987-88 and 1988-89, we must remand to the district court to calculate an appropriate reduced fee award to reflect the adjusted scope of J.H.'s success.

IV.

Lastly, the Board of Education argues that the district court erroneously excluded the testimonies of Dr. Lynn Caravello, the Director of Special Services at the time J.H. reentered the Bernardsville School District in 1990, and Ms. Joanne Seelaus, school psychologist, from the de novo hearing the district court held. The Board of Education sought to admit a joint report prepared by Dr. Caravello and Ms. Seelaus which included a reevaluation of J.H. in anticipation of his return and other information relevant to the 1990-91 IEP prepared for J.H.

During the prior administrative law hearing, the administrative law judge had excluded this report. Nevertheless, Ms. Seelaus had offered testimony at the hearing on the Board's behalf exclusive of matters concerning J.H.'s post-reentry

experience.  Dr. Caravello had also been present and available to testify before the administrative law judge on June 4, 1991, although she did not testify.

At the district court hearing, the court excluded their testimony in part on the ground that the IEP subsequently developed for J.H. in 1990-91, which was not at issue in the present litigation, was irrelevant to the issue of the appropriateness of the public education offered to J.H. in the prior contested years.  The district court further held that the testimony would be cumulative and would improperly embellish testimony previously given at the administrative hearing.  Order of the District Court, Civ. No. 92-3694 (D.N.J. Sept. 9, 1993).  See Burlington v. Department of Education, 736 F.2d 773, 790-91 (1st Cir. 1984) ("additional evidence" under 20 U.S.C. § 1415(e)(2) "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony"; the trial court in its discretion must not allow "such evidence to change the character of the hearing from one of review to a trial de novo"), aff'd, 471 U.S. 359 (1985); Egg Harbor Township Board of Education v. S.O., by his Guardian ad litem, R.O., Civil Action No. 90-1043, slip op. at 3 n.1 (D.N.J. Aug. 19, 1992)("additional evidence" under 20 U.S.C. § 1415(e)(2) should not be cumulative, introduced to impeach credibility of administrative hearing witnesses, nor embellish testimony from the administrative hearing, and should not have been available for proffer during the administrative hearing).

We do not find any error of law or abuse of discretion in the district court's decision to exclude the joint report on J.H.'s parents' motion in limine. The Bernardsville School District's performance with regard to the IEP it developed for J.H. for the 1990-91 school year and for prospective years are not at issue here and admission of the joint report would not affect the disposition of this case.

V.

We will thus vacate that portion of the district court's November 15, 1993 judgment which awards J.H.'s parents reimbursement for tuition at the Landmark School for the academic years 1987-88 and 1988-89, and we will affirm that portion which awards J.H.'s parents reimbursement for tuition at the Landmark School for academic year 1989-90. Although we agree with the district court's designation of J.H.'s parents as a "prevailing party" pursuant to 20 U.S.C. § 1415(e)(4)(B), we will vacate the amount of attorneys' fees set by the district court by order dated February 2, 1994, and remand to the district court for recalculation.

MCKEE, Circuit Judge, concurring in part and dissenting in part.

I concur with Part IV of the majority opinion. In addition, I agree that J.H.'s parents are entitled to reimbursement for the 1989-90 academic year and thus concur with Part II B of the majority opinion.  However, I believe that J.H.'s parents are entitled to be reimbursed for 1987-88 and 1988-89 as well.  Therefore, I respectfully dissent from Part II A of the majority opinion.

I.

The majority errs by allowing the timeliness of the parents' request for due process to define and control its analysis.[17]  The majority states:

> [W]here proceedings were initiated more than two years after J.H.'s transfer, we must place into our equation the practical opportunity afforded the school district to modify its IEP or to determine definitively whether expenditures occurred outside the district could have been obviated by the filing of a prompt complaint. . . . We, of course, recognize that the school district has the duty in the first instance to provide an appropriate IEP, and moreover, to demonstrate by a preponderance at a due process hearing that the IEP it offered was indeed appropriate.  With that foremost in mind, we must nevertheless also recognize that as a practical reality, and as a matter of procedural law of which J.H.'s parents were fully apprised, the right of review contains a corresponding parental duty to

---

[17] Because I agree with much of the majority's assessment of this case, I take the liberty of quoting at length from the majority opinion in explaining my reasons for dissenting.

> unequivocally place in issue the
> appropriateness of an IEP. This is
> accomplished through the initiation of review
> proceedings within a reasonable time of the
> unilateral placement . . . . We think more
> than two years, indeed, more than one year,
> without mitigating excuse, is an unreasonable
> delay.

Majority opinion at 20-22 (footnote omitted).

I do not agree that the Act "contains a corresponding parental duty."  The Act does not state that the parental right to reimbursement is conditioned upon the parents' request for a due process hearing.  Further, the Act does not specify a time frame within which parents must seek evaluation of an IEP upon pain of forfeiting their child's right to the benefits of the Act.  "[B]oth the parents and the district have an interest in assuring that a handicapped child receives an appropriate education." Lascari v. Board of Educ., 560 A.2d 1180, 1188 (N.J. 1989) (emphasis added).  I fail to see where the Act imposes the unilateral parental obligation to which the majority refers and it clearly does not impose a time limitation upon the district court's authority to grant retroactive reimbursement.  The majority has effectively amended the Act in a manner which is inconsistent with its purpose and with the remedial authority that the Act vests in a district court.

A district court's power to award retroactive reimbursement arises from its authority to grant relief that effectuates the provisions of the Act.

> The statute directs the court to 'grant such
> relief as [it] determines is appropriate.'

> The ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be 'appropriate.' Absent other reference, the only possible interpretation is that relief is to be 'appropriate' in light of the purpose of the Act.

School Comm. of Burlington v. Department of Educ., 471 U.S. 359, 369 (1985) (emphasis added). The purpose of the Act is "'to assure that all handicapped children have available to them . . . a free appropriate public education which emphasizes special education . . . designed to meet their unique needs [and] to assure that the rights of handicapped children and their parents . . . are protected.'" Id. at 367 (citing 20 U.S.C. § 1400(c)). The Supreme Court in Burlington unequivocally declared that "a free appropriate public education" means "special education and related services which [] have been provided at public expense, under public supervision and direction, and without charge . . . ." Id. at 367–68 (quoting 20 U.S.C. § 1401(18)) (internal quotation marks omitted).

The Act clearly requires that a school district provide a free appropriate education for eligible students. Thus, the issue before us is not "whether J.H.'s parents requested due process for their son within an appropriate time limitation," as the majority states. See majority opinion at 3. Rather, the issue we should address is whether the requested relief is "appropriate" in light of the purposes of the Act.

Accordingly, we must examine the circumstances surrounding the request for reimbursement. Our analysis should examine the length of the delay in requesting formal due process and the number of years for which compensation is requested, the adequacy of the IEP that caused the parents to withdraw J.H., the bona fides of the parties, and the school district's notice of the problem and of the likelihood that it may be asked to reimburse J.H.'s parents.

The Length of the Delay.

This is not a case of parents seeking reimbursement for an entire elementary and secondary education after allowing many years to pass before requesting a due process hearing. The delay in commencing due process was not exorbitant. Moreover, "[t]he fact that here the regulations do not specify a time limitation within which to bring a due process hearing, as well as the very nature and social significance of the education of children with disabilities, [should] incline us to equitable considerations." Majority opinion at 19. Furthermore, although the school district would no doubt prefer to avoid any additional expenditures, the school district does not claim that the cost of having to reimburse J.H.'s parents for J.H.'s entire three years at Landmark will interfere with its ability to educate other children.

The IEP.

The IEP that caused J.H.'s parents to withdraw him from Bernardsville was, indeed, woefully inadequate. The majority opinion sets forth at length the inadequacy of that IEP[18] and appropriately concludes that "[t]he record bespeaks an appalling failure on the part of the educational bureaucracy to develop and implement an appropriate IEP." Majority opinion at 16-17. Moreover,

> the district court concluded that the Bernardsville School District failed to confer upon J.H. even the minimally satisfactory educational benefit under the least stringent standard which could arguably have been applied, and that the IEPs developed for J.H. during the relevant school years were not reasonably calculated to confer an educational benefit. . . . [T]he district court affirmed the administrative law judge's specific findings, including that the IEPs did not contain adequate statements of current educational status or measurable annual goals, were virtually redundant from year to year and hence unresponsive to J.H.'s apparent difficulties . . . .

Majority opinion at 14. In short, "the IEP developed for [J.H.] was both procedurally and substantively inadequate." Majority opinion at 20. It is thus little wonder that J.H. failed to progress educationally, socially, or developmentally from kindergarten to seventh grade when his parents finally said "enough" and withdrew him from the Bernardsville district.

The Good Faith of the Parties.

---

[18] See majority opinion at 10-11.

"There is no evidence whatsoever that J.H.'s parents acted in bad faith, and given the severe deficiencies in the IEPs developed for J.H. at Bernardsville, it is clear that J.H.'s parents acted reasonably . . . ." Majority opinion at 19-20. Indeed, given their concern for their child, they had no option but to withdraw J.H. from the Bernardsville district.

The good faith of J.H.'s parents is in stark contrast to the attitude and behavior of the school district. J.H.'s placement at Bernardsville was "inappropriate and not reasonably calculated to confer educational benefit on J.H." Majority opinion at 7. "Year after year the School District failed to design an Individualized Educational Program suitable to J.H.'s special needs, and failed to intervene responsibly in his quite apparent trend of academic and social deterioration." Majority opinion at 2.  Thus, the school district almost totally disregarded its duty to J.H. and his welfare.

Notice.

The Bernardsville District had been aware of J.H.'s developmental problems since J.H.'s enrollment in kindergarten.  J.H. had been evaluated and assessed by the appropriate school personnel since J.H.'s earliest days in the Bernardsville School District.  Accordingly, "it is untenable for the school district to maintain the argument that it was not aware of a problem with the IEP it offered, virtually unmodified, to J.H. year after year despite his lack of academic progress,

and in the face of his social regression." Majority opinion at 20. Quite naturally, J.H.'s parents were dissatisfied, and the school district was well aware of their dissatisfaction. In August of 1987, J.H.'s parents requested that school officials place J.H. at Landmark. Upon the district's refusal to do so the parents unilaterally withdrew J.H. and placed him at Landmark themselves.

## II.

The majority's analysis fails to adequately consider the totality of these factors which weigh so heavily in favor of the parents. Instead, the majority leans with sufficient force upon the parents' delay in requesting due process hearings to tip the equitable balance in favor of the school district:

> We are cognizant of the fact that the school district serves a very large student population, and in light of the numerous contacts it has with parents seeking the individual welfare of their respective children, mere notice of parental "dissatisfaction" does not alone put the Board on reasonable notice that the parents will challenge a particular IEP in the future and seek reimbursement for an interim unilateral placement in a private institution.

Majority opinion at 20-21. J.H.'s situation presents far more than "mere notice of parental 'dissatisfaction.'" This is not a case of disgruntled and unrealistic parents who are concerned that the school's curriculum is not sufficiently challenging their child. Furthermore, the size of the student population and the number of parental contacts is not pertinent to our inquiry.

An eligible child in a large urban school district is entitled to the same free appropriate education as a child in the smallest rural community.  The Act does not distinguish based upon the size of the student population and we should not allow that distinction to influence our analysis.  The school district's size is no excuse for its conduct in this case.

The Bernardsville District was clearly on notice, albeit not through a formal due process request, that J.H.'s parents wanted the school district to pay for the cost of Landmark.  The district could have requested hearings in order to have the adequacy of its IEP promptly determined and thereby prevented the very problem it now complains of, notwithstanding the majority's conclusion that the Act imposes a unilateral obligation on the parents. "When a dispute arises between the board and the parents, either party has the right to resolve the matter through an administrative proceeding known as an `impartial due process hearing.'" Lascari, 560 A.2d at 1183 (citing 20 U.S.C. § 1415(b)(2)).

Courts have routinely held that equity requires the burdens of the Act be placed on the school district and not on the parents.  See McKenzie v. Smith, 771 F.2d 1527, 1531 (D.C. Cir. 1985) (where district sought to change child's IEP, it had the burden of proving that the proposed placement complied with the requirements of the Act); Grymes v. Madden, 672 F.2d 321, 322 (3d Cir. 1982) (affirming district court's decision that the

district had "failed to sustain its burden of proof that an appropriate public program existed"); Cf. S-1 v. Turlington, 635 F.2d 342, 348-49 (5th Cir.) (burden on district to question whether student's misconduct is due to handicap because parents lack expertise to develop an appropriate IEP for their child), cert. denied 454 U.S. 1030 (1981), abrogated on other grounds by Honig v. Doe, 484 U.S. 305 (1988).  It is understandable that a school district may be reluctant to initiate formal proceedings against a parent.  However, the district's failure to do so ought to be considered when it asserts that parental delay exonerates it from its failure to provide a student with a free appropriate public education.

Moreover, an argument similar to that accepted by the majority was rejected by the Supreme Court in Burlington. The town in Burlington argued that the parents had forfeited their claimed right to reimbursement for alternative placement by removing their child from public school during the pendency of administrative proceedings in violation of 20 U.S.C. § 1415(e)(3).[19]  The Supreme Court responded by stating:

> We do not agree with the Town that a parental violation of § 1415(e)(3) constitutes a waiver of reimbursement. The provision says nothing about financial responsibility, waiver, or parental right to reimbursement at the conclusion of judicial proceedings.

_____

[19] Section 1415(e)(3) states in part: "During the pendency of any proceedings conducted pursuant to [§ 1415], unless the State or local educational agency and the parents . . . otherwise agree, the child shall remain in the then current educational placement . . . ."  20 U.S.C. § 1415(e)(3) (1988).

> Moreover, if the provision is interpreted to cut off parental rights to reimbursement, the principal purpose of the Act will in many cases be defeated in the same way as if reimbursement were never available. . . . The Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives.

Burlington, 471 U.S. at 372. This case is different because we are concerned with parents who withdrew their child prior to requesting administrative hearings. Yet, the situation before us is analogous to Burlington and the difference does not allow us to abandon the Supreme Court's reasoning.

### III.

We do not achieve "substantial justice" by awarding reimbursement for the 1989-90 academic year and requiring the parents to pay the remaining two thirds of J.H.'s tuition expense. See majority opinion at 26-27. These parents are seeking reimbursement, not damages. "Reimbursement merely requires the [Bernardsville School District] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." Burlington, 471 U.S at 370-71.

The parents' request for the 1987-88 and 1988-89 academic years is appropriate and should be granted. Our failure to affirm the district court effectively shifts most of the obligation of providing an appropriate education from the Board

to the shoulders of J.H.'s parents.  Accordingly, I respectfully dissent from Part II A of the majority opinion.