**COMMUNITY MEDICAL CENTER,**
(Estelle Hopkins, Richard Sharkey)

v.

**LOCAL 464A UFCW WELFARE REIMBURSEMENT PLAN, Community Medical Center, Appellant.**

No. 04–1613.

United States Court of Appeals, Third Circuit.

Argued March 24, 2005.

Decided July 29, 2005.

---

Keith McMurdy, (Argued), Shea Hutchins Lukacsko, Grotto, Glassman & Hoffman, Roseland, NJ, Camille J. Kassar, Maloof, Lebowitz, Connahan & Oleske, Chatham, NJ, for Appellant.

George R. Murphy, Michael T. Anderson, (Argued), Mark Hanna, Davis, Cowell & Bowe, LLP, Washington, D.C., John M. Agnello, Kerrie R. Heslin, Carella, Byrne, Bain, Gilfillan Cecchi, Stewart & Olstein, Roseland, NJ, for Appellee.

Frank R. Ciesla, Giordano, Halleran & Ciesla, Middletown, NJ, for Amicus-appellant.

Before NYGAARD,* McKEE and RENDELL, Circuit Judges.

## OPINION

MCKEE, Circuit Judge.

Community Medical Center ("CMC") appeals the District Court's orders granting summary judgment and awarding attorneys' fees to Local 464A UFCW Welfare Reimbursement Plan (the "Plan"), and denying CMC's motion for remand. For the reasons that follow, we will dismiss this appeal, vacate the District Court's grant of summary judgment, and remand to the District Court with instructions to remand to the state court.

## I.

Because we write primarily for the parties, it is not necessary to recite the facts or procedural history of this case except insofar as may be helpful to our brief discussion. We note that the Plan entered into a contract with MagNet, Inc., in 1995 that provided in relevant part:

> Pursuant to a valid assignment from Eligible Person, Subscriber or its authorized agent shall directly pay Network Hospitals for Covered Services provided to Eligible Persons within thirty (30) days after date of receipt of submitted Clean Claims . . .

> Where obligated, if Subscriber fails to pay within the appropriate time frame, the Subscriber acknowledges that it will lose the benefit of the MagNet discounted reimbursement rate and that the Network Hospital is then entitled to bill and collect from Subscriber and Eligible Person its customary rate for services rendered. If Subscriber fails to make the payment, the Network Hospital may pursue any remedies available against Subscriber and Eligible Person.

Two plan participants—Estelle Hopkins and Richard Sharkey (hereinafter "plan participants")—received medical treatment at CMC. The Plan paid CMC for its services at the discounted rate after CMC sent claims for each these participants.

Thereafter, CMC sued the Plan in state court alleging breach of contract and seeking to recover $24,115.00, which was the difference between the discounted rate the Plan paid, and the customary rate for the services that the plan participants received. CMC maintained that the Plan had improperly paid the discounted rate

* Honorable Richard L. Nygaard assumed senior status on July 9, 2005.

since payment was not made within the requisite 30–day time period specified in the contract. The Plan removed the case to District Court, based upon federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1332(e) and (f). The Plan argued that CMC's claims were claims for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Thereafter, the District Court denied CMC's motion to remand to state court and granted the Plan's motion for summary judgment based upon the court's conclusion that CMC's claims were preempted by ERISA. The court explained: "where a plaintiff health care provider's claim is predicated upon an assignment of benefits of the beneficiary ... there is derivative standing to assert the claim ... therefore, [the claim] is one which, in fact, arises under Section 1132(a) and constitutes a claim for benefits."

## II.

For reasons we have already stated in *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir.2004), we hold that there is no federal jurisdiction over CMC's claim. There, we explained that

Section 502(a) of ERISA allows "a participant or beneficiary" to bring a civil action, *inter alia*, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). By its terms, standing under the statute is limited to participants and beneficiaries....

The parties dispute whether, under the law of this Circuit, the Hospital can obtain standing under § 502(a) by virtue of an assignment of a claim from a participant or beneficiary. We need not resolve this dispute, however, because

there is nothing in the record indicating that [the plan participants] did, in fact, assign any claims to the Hospital.

As the party seeking removal, the Plan bore the burden of proving that the Hospital's claim is an ERISA claim. Accordingly, the Plan bore the burden of establishing the existence of an assignment....

....

Because the Plan has failed to demonstrate that the Hospital obtained an assignment from [the plan participants], we do not reach the "standing-by-assignment of claim" issue. Therefore, the Plan cannot demonstrate that the Hospital has standing to sue under § 502(a). As a result, the Hospital's state law claims could not have been brought under the scope of § 502(a) and are not completely pre-empted by ERISA.

*Pascack Valley*, 388 F.3d at 400–02 (citations omitted). We decided *Pascack Valley* after the District Court filed its opinion. Accordingly, that court did not have the benefit of the holding in *Pascack Valley* when it decided this case.

Nevertheless, here, as in *Pascack Valley*, there is no evidence of any assignments executed by the plan participants. Accordingly, we have no way of knowing if executed assignments exist. Moreover, even assuming that such assignments do exist, we still have no way of knowing their terms or parameters.

The Plan argues that, because "[t]he MagNet contract defines the Hospital's claim as an assignment of the patient's right to reimbursement ... [t]he MagNet contract itself is sufficient to establish the legal fact of the assignment, even in the absence of a separately executed document." We disagree.

Whether the Subscriber Agreement requires the Hospital to obtain an assignment in order to demand payment from

the Plan says nothing about whether an assignment was in fact made. Because neither [plan participant is a party] to the Subscriber Agreement, that document cannot, in and of itself, establish an assignment of their claims.

*Pascack Valley*, 388 F.3d at 401.

We are also unpersuaded by the Plan's argument that we can proceed based upon a concession CMC made in the District Court. CMC's counsel merely stated "that an actual [assignment] form has been executed." Counsel did not concede that the assignment encompassed claim benefits.**

Also as in *Pascack Valley*, the Plan has the burden of proving that CMC's claim is governed by ERISA since the Plan sought removal. It is now clear that the Plan has not satisfied that burden. Even assuming CMC can obtain standing under ERISA by an assignment of claimants' benefits, its failure to establish that an appropriate assignment exists is fatal to its standing.

### III.

Accordingly, we conclude that there is no federal jurisdiction over CMC's claim,

and we will therefore dismiss this appeal, vacate the District Court's grant of summary judgment and attorneys' fees orders, and remand to the District Court with instructions to remand to state court.***

---

** In fact, counsel repeatedly maintained that any such assignment form only assigned the right to reimbursement.

*** CMC appealed the District Court's January 29, 2004 order awarding attorneys' fees to defendant; however, that order did not quantify the amount of fees to be awarded. The order quantifying the attorneys' fees was issued on August 6, 2004, after CMC filed this appeal. The Fund maintains that we have no jurisdiction to review the District Court's January 29, 2004 order since it did not quantify the fee amount. We do not agree. Faced with a similar situation in *Bernardsville Bd. of Ed. v. J.H.*, 42 F.3d 149, 156 n. 10 (3d Cir. 1994), we concluded that the appeal, which specified only the District Court's initial, unquantified attorneys' fees award order, incorporated the subsequent order quantifying the attorneys' fees award. We found that:

Because the [initial] order designates the prevailing party for purposes of attorneys'

fees, we recognize an adequate connection between it and the [subsequent] order for purposes of extending our jurisdiction over the latter, given that the subsequent appellate proceedings manifest the appellant's intent to appeal the attorneys' fees issue. Importantly, here the opposing party had and exercised a full opportunity to brief the issue and did not raise any claim of prejudice.

*Id.; see also Ragan v. Tri–County Excavating, Inc.*, 62 F.3d 501, 505–506 (3d Cir.1995) (exercising jurisdiction over an unquantified attorneys' fees award, pursuant to 28 U.S.C. § 1291 and the principle expressed in *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 184–85 (3d Cir.1983), which provides that "this Court may entertain an appeal from a nonfinal order if an order which is final is subsequently entered before our adjudication on the merits.").