

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-1995

# David v Wilson School Dist.

Precedential or Non-Precedential:

Docket 94-2051

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"David v Wilson School Dist." (1995). *1995 Decisions.* Paper 294.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/294

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-2051


SUSAN N.; DAVID N.,
Individually and as Parents and Natural
Guardians to M.N. a minor,

Appellants

v.

WILSON SCHOOL DISTRICT


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 93-4658)


Argued October 10, 1995

BEFORE:  GREENBERG, LEWIS, and ROSENN, Circuit Judges

(Filed: November 20, 1995)


Leonard Rieser (argued)
Alyssa R. Fieo
Education Law Center
801 Arch Street
Suite 610
Philadelphia, PA  19107

Attorneys for Appellants


Andrew E. Faust (argued)
Rosemary E. Mullaly
Sweet, Stevens, Tucker & Katz
116 East Court Street
P.O. Box 150
Doylestown, PA  18901

Attorneys for Appellee

OPINION OF THE COURT


GREENBERG, Circuit Judge.


This case arises under the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-85 (1990).
Appellants Susan and David N. brought the case individually, and
as parents and natural guardians of their daughter, M., against
the Wilson School District, charging that it had not fulfilled
its statutory obligations to M. under the IDEA.  The hearing
officer at the local educational level found in appellants'
favor, concluding that M. was both mentally gifted and afflicted
with a specific learning disability, and that she thereby was
entitled to special education.  An appeals panel at the state
education agency level reversed the hearing officer's findings.
The appellants challenged this decision in a civil action in the
district court, which affirmed the decision of the appeals panel
on the record of the administrative proceedings without accepting
the appellants' proffer of additional evidence.  The appellants
appeal from the district court's order entered September 27,
1994, in accordance with its opinion.


## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  FACTUAL BACKGROUND

The appellants reside in the Wilson School District
with M., who is now nine years old.  They believe that M. suffers

from attention deficit disorder with hyperactivity ("ADHD"), a learning disability manifested in attention problems, hyperactive motor behavior, poor social skills, extensive difficulty in completing tasks, low frustration tolerance, and low self-esteem. Memorandum and Order of the District Court ("Mem."), N. v. Wilson Sch. Dist., No. 93-4658, slip op. at 2 (E.D. Pa. Sept. 26, 1994). M. has been treated with Ritalin, a medication intended to control the symptoms of ADHD. See Mem. at 3 n.6. The appellants believe that M.'s disability may affect her progress in school and that she is entitled to special education from the State of Pennsylvania. Id. at 2.

During the spring of 1992, when M. was in kindergarten, the appellants requested that the school district undertake a multidisciplinary evaluation of her to determine whether she was in need of special education.[1] Id. In accordance with the appellants' request, a district multidisciplinary team ("MDT") conducted an evaluation in April 1992 that included two psychological examinations, an interview with M.'s kindergarten teacher, and discussions with appellants. Id. at 2-3. The MDT issued a report on June 2, 1992, concluding that M. was not "exceptional,"[2] and that she did not require special education.

---

[1] Under the IDEA, "special education" is defined as "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a child with a disability, including -- (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(a)(16).

[2] Pennsylvania defines the term "exceptional children" as "children of school age who deviate from the average in physical, mental, emotional or social characteristics to such an extent that they require special educational facilities or services

Specifically, the MDT found that M. did exhibit symptoms consistent with ADHD, including processing weaknesses that involved fine motor control, but that she had strong verbal skills and her ability and achievement levels were average or above average.  The MDT concluded that M. could be educated in a regular classroom as long as her school program addressed "`her strong verbal skills, her weak motor skills, and her difficulty with impulsivity and inattention and hyperactivity (which often lead to disorganization).'"  Id. at 3 (quoting Record at 321a).

On June 9, 1992, an Individual Education Program ("IEP") team met with the appellants to discuss the MDT report.[3]  Mem. at 4.  The IEP team agreed with the MDT's evaluation that M. was not exceptional and not in need of special education.  The team concluded that, in spite of her weaknesses, M. could sustain

_____

. . . ."  Pa. Stat. Ann. tit. 24, § 13-1371(1) (1992).

The IDEA defines "children with disabilities" as children "(i) with mental retardation, hearing impairments including deafness, speech or language impairments, visual impairments including blindness, serious emotional disturbance, orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, need special education and related services."  20 U.S.C. § 1401(a)(1)(A).

In Pennsylvania, the term "exceptional" is used to refer both to students who are mentally gifted and in need of special education and students who have one of the 11 disabilities recognized under the IDEA and who, as a result thereof, require special education.  See 22 Pa. Code §§ 14.1 (definitions of "exceptional student" and "eligible student"); 342.1(b) definition of "mentally gifted") (1994).  The IDEA does not include the concept of "mentally gifted" within its definition of "children with disabilities."  See 20 U.S.C. § 1401(a)(1)(A).

[3] Under Pennsylvania law, an IEP team must make the final determination of whether a student is eligible for special education.  See 22 Pa. Code §§ 14.32, 342.32 (1994).

4

herself in a regular academic curriculum with proper assistance from her parents and teachers.  Id.  The team then developed a Notice of Recommended Assignment ("NORA"), which consisted of written program "suggestions" to M.'s regular education teachers. Id.

The appellants refused to approve the school district's NORA, which was offered to them on June 18, 1992.  Mem. at 5. Instead, they requested a pre-hearing conference and an independent evaluation of M. at the school district's expense. On July 26, 1992, the appellants requested an administrative due process hearing pursuant to the IDEA, 20 U.S.C. § 1415(b)(1)(E).[4] Id.

A Pennsylvania Special Education Hearing Officer conducted the due process hearing on September 17 and September 28, 1992.  The appellants presented two issues: (1) whether, under Pennsylvania law, M. is a mentally gifted child suffering from a _!___E_@**Error! Reference source not found.**`ÆÐÐ20 U.S.C. ÀÀ 1401(a)15.  States wishing to receive funding underthe IDEA must ensure that "all children residing in the State whoare disabled, regardless of the severity of their disability, andwho are in need of special education and related services areidentified, located, and evaluated" by the state.  20 U.S.C. ÀÀÀÀ1412(2)(C), 1414(a)(1)(A); ÃÃsee alsoÄÄ 34 C.F.R. ÀÀÀÀ 300.128(a)(1) &note 1,

---

[4] The district court seems to have mistakenly treated the school district's list of recommendations (NORA) for M. as an Individual Education Program (IEP).  See Mem. at passim.  The parties have stipulated that the district court was in error.  See Joint Stipulation, app. at 126.  We describe an IEP, which is far more comprehensive than a NORA, later in this opinion.

300.220 & note, 300.300 note 3.  This obligation is knownas the "child find" duty.  ÃÃMatulaÄÄ, slip op. at 10.ÔØ'0* ( (°°ÔŒÁ``ÁThe primary mechanism for delivering a free appropriateeducation is the development of a detailed instruction plan,known as an Individual Education Program ("IEP"), for each childclassified as disabled.  20 U.S.C. ÀÀ 1401(18).  An IEP consistsof, ÃÃinter aliaÄÄ, a specific statement of a student's presentabilities, goals for improvement, services designed to meet thosegoals, and a timetable for reaching the goals via the services. ÃÃId.ÄÄ ÀÀ 1401(a)(20).  The creation of an administrative structurecapable of producing IEPs is a requisite to receiving IDEA funds. ÃÃId.ÄÄ ÀÀ 1414(a)(5).  To the extent possible, however, a school must"mainstream" disabled students ©© that is, instruct them in aregular, not special, education setting.  ÃÃId.ÄÄ ÀÀ 1412(5).Á``ÁThe IDEA authorizes federal reviews of state and localcompliance, ÃÃseeÄÄ 34 C.F.R. ÀÀÀÀ 104.61, 100.7, and affords certainprocedural safeguards to the parents of disabled children.  ÃÃInteraliaÄÄ, parents may examine all relevant records concerningevaluation and placement of their children, 20 U.S.C. ÀÀ1415(b)(1)(A); must receive prior written notice when a schoolproposes or refuses to alter a placement, ÀÀ 1415(b)(1)(C); maycontest in an impartial due process hearing decisions regardingthe evaluation of their child or the appropriateness of thechild's program, ÀÀÀÀ 1415(b)(1)(E), 1415(b)(2); may appeal thedecision from such a hearing to the state education agency, ÀÀ1415(c); and may obtain judicial review of the administrativedecision, ÀÀ 1415(e)(2).  ÃÃSeeÄÄ

6

*Matula*, slip op. at 11; *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 158 & n.13 (3d Cir. 1994); *Lester H. v. Gilhool*, 916 F.2d 865, 869 (3d Cir.1990), *cert. denied*, 499 U.S. 923, 111 S.Ct. 1317 (1991). Pennsylvania fulfills its IDEA obligations through a complex statutory and regulatory scheme codified at Pa. Stat. Ann. tit.24, §§ 13©1371 and 13©1372 (1992), and 22 Pa. Code §§ 14.1 to14.74, 342.1 to 342.74 (1994).

## B. JUDICIAL REVIEW UNDER THE IDEA

As we noted above, the appellants brought this action against the school district after requesting an administrative due process hearing before a Pennsylvania Special Education Hearing Officer to satisfy a requirement of the IDEA, 20 U.S.C. §§ 1415(b)(1)(E), 1415(b)(2). Mem. at 5. After the hearing officer decided in appellants' favor, the school district appealed his decision to the Pennsylvania Special Education Appeals Panel, which ruled in its favor. *Id.* at 7. Accordingly, the appellants exhausted the IDEA's provisions for administrative review, *see* section 1415(c), and thus were entitled to bring this civil action. *See* section 1415(e)(2). It is the nature of that judicial proceeding, in particular the extent to which the court is required to receive evidence beyond that contained in the administrative record, that the parties now principally dispute.

We approach this question by first addressing the judicial review provision of the IDEA, section 1415(e)(2), which provides in relevant part:

Any party aggrieved by the findings and decision made under subsection . . . shall have the right to bring a civil action with respect to the

7

complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. ÀÀ 1415(e)(2). In determining the scope of a district court's review under the IDEA, the Supreme Court has stated that the statute's language instructing that the district court, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate," does not mean that courts are free to substitute their own notions of sound education policy for those of the educational agencies they review, but rather that they should give "due weight" to the administrative proceedings. Board of Educ. v. Rowley, 458 U.S. at 205-06, 102 S.Ct. at 3050-51; see also Fuhrmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1034 (3d Cir. 1993). Naturally, the requirement that the courts give "due weight" to administrative proceedings has obliged the district courts to determine how much weight is "due." See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995). The Court of Appeals for the Ninth Circuit has observed that "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record

8

and are held to a highly deferential standard of review." _Ojai Unified Sch. Dist. v. Jackson_, 4 F.3d 1467, 1471 (9th Cir. 1993), _cert. denied_, 115 S.Ct. 90 (1994). Because the IDEA specifically requires a district court to "receive the records of the administrative proceedings, . . . hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence," grant any appropriate relief, 20 U.S.C. §§ 1415(e)(2), a district court "does not use the substantial evidence standard typically applied in the review of administrative agency decisions, `but instead must decide independently whether the requirements of the IDEA are met.'" _Murray v. Montrose County Sch. Dist._, 51 F.3d 921, 927 (10th Cir. 1995) (quoting _Board of Educ. v. Illinois State Bd._, 41 F.3d 1162, 1167 (7th Cir. 1994)). The courts of appeals differ in their description of the interplay between the Supreme Court's "due weight" interpretation and the IDEA's provision for independent judicial review. As the Court of Appeals for the Tenth Circuit recently summarized, "[t]he district court must . . . independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below. This has been described as a 'modified _de novo_ review,' or as 'involved oversight.'" _Murray_, 51 F.3d at 927 (citations omitted). The Court of Appeals for the First Circuit has described judicial review under the IDEA as follows: "Congress

9

intended courts to make bounded,Ô'O* ( (°°Ôindependent decisions ©© bounded by the administrative record andadditional evidence, and independent by virtue of being based ona preponderance of the evidence before the court[.]"  ÃÃTown ofBurlington v. Department of Educ.ÄÄ, 736 F.2d 773, 791 (lst Cir.1984), ÃÃaff'd on other groundsÄÄ, 471 U.S. 359, 105 S.Ct. 1996(1985).Á``ÁWe have not spoken definitively on what constitutes"due weight" under the ÃÃRowleyÄÄ standard, and need not do so today. We, however, have referred to the interpretation of the standardfirst developed by the Court of Appeals for the First Circuit:ÐÐÐÐÂ°``Â[T]he question of the weight due theadministrative findings of facts must be leftto the discretion of the trial court.  Thetraditional test of findings being binding onthe court if supported by substantialevidence, or even a preponderance of theevidence, does not apply.  This does not mean,however, that the findings can be ignored. The court, in recognition of the expertise ofthe administrative agency, must consider thefindings carefully and endeavor to respond tothe hearing officer's resolution of eachmaterial issue.  After such consideration, thecourt is free to accept or reject the findingsin part or in whole.ÐÐÆx`ÆÐÐÃÃBurlingtonÄÄ, 736 F.2d at 791©92; ÃÃseeÄÄ ÃÃCarlisle Area Sch. v. ScottP.ÄÄ, 62 F.3d 520, 527 (3d Cir. 1995) ("[D]istrict courts havediscretion to determine how much deference to accord theadministrative proceedings[.]"); ÃÃBernardsvilleÄÄ, 42 F.3d at 161(quoting ÃÃBurlingtonÄÄ); ÃÃOberti v. Board of Educ.ÄÄ, 995 F.2d 1204,1219 (3d Cir. 1993) ("[T]he amount of deference to be affordedthe administrative

10

proceedings `is an issue left to thediscretion of the district court.'") (quoting ÃÃJefferson CountyÔ'0* ( (°°ÔBd. of Educ. v. BreenÄÄ, 853 F.2d 853, 857 (11th Cir. 1988));ÃÃFuhrmannÄÄ, 993 F.2d at 1042 (Hutchinson, J., concurring anddissenting).Á``ÁThe district court relied on ÃÃRowleyÄÄ for itsdetermination that "[w]hile the court may, at its discretion,hear additional evidence, it must give `due weight' to theadministrative proceedings and the education experience andexpertise applied therein." Mem. at 11. The district courtthereafter concluded that "the proper exercise of discretionmove[d] it to decline to second©guess the judgment of theadministrative panel with evidence that was not before the panelwhen it made its decision," Mem. at 12. Accordingly, thedistrict court ruled on the merits of the appellants' casewithout evaluating or accepting their proffer of additionalevidence. ÃÃId.ÄÄ The district court thus seems to have interpretedÃÃRowleyÄÄ to limit severely the IDEA's directive in section1415(e)(2) that, on judicial review, a court "shall hearaddditional evidence at the request of a party." Á``ÁOur review of a district court's legal analysis isplenary. However, our review here "must be conducted within thegeneral framework of deference to state decision©makers" that isdictated by the IDEA and by the Supreme Court's direction inÃÃRowleyÄÄ. ÃÃFuhrmannÄÄ, 993 F.2d at 1032 (citing ÃÃWexler v. WestfieldBd. of Educ.ÄÄ, 784 F.2d 176, 181 (3d Cir.), ÃÃcert. deniedÄÄ, 479 U.S.825, 107 S.Ct. 99 (1986)); ÃÃsee alsoÄÄ ÃÃCarlisleÄÄ, 62 F.3d at 526("We, of course, exercise plenary review over the districtÔ'0* ( (°°Ôcourt's conclusions of law and review its

11

findings of fact forclear error.").  In view of a district court's scope of reviewunder section 1415(e)(2) which goes beyond the traditionaldeferential standard, and in view of the provision in thatsection for the court to hear additional evidence at the requestof a party, we hold that the district court erred in concludingthat it is within a court's discretion summarily to excludealtogether the consideration of additional evidence submitted bya party.  Consequently, we are obliged to vacate its order andremand the matter for further proceedings.  We turn, then, to aconsideration of what additional evidence may be introduced onthe remand.Áàˆ ìÁC.  ADDITIONAL EVIDENCEƒÁ``ÁThe Court of Appeals for the First Circuit, inÃÃBurlingtonÄÄ, 736 F.2d 773, seems to have been the first court ofappeals to analyze the IDEA's directive that a district court"shall hear additional evidence at the request of a party."  ÃÃId.ÄÄat 790.  There, the court held that the word "additional" shouldbe construed in the ordinary sense of the word to mean"supplemental."  ÃÃId.Ä  Thus construed, the act:ÐÐÐÐÂ°``Â[C]ontemplates that the source of the evidencegenerally will be the administrative hearingrecord, with some supplementation at trial. The reasons for supplementation will vary;they might include gaps in the administrativetranscript owing to mechanical failure,unavailability of a witness, an improperexclusion of evidence by the administrativeagency, and evidence concerning relevantevents occurring subsequent to theadministrative hearing.  The starting pointfor determining what additional evidenceÔØ'0* ( (°°Ôshould be received, however, is the record ofthe administrative proceeding.ÐÐÆx`ÆÐÐÃÃId.Ä  In

12

providing examples of types of additional evidence thatmight be relevant to judicial review under the IDEA, theÃÃBurlingtonÄÄ court did not limit admissible evidence to those typesenumerated, which interpretation the school district would haveus make. ÃÃSeeÄÄ appellee's br. at 12©13. In contrast, the courtseems merely to have provided examples of additional evidencethat a court could find relevant to IDEA matters on judicialreview. Á``ÁAlthough we never explicitly have interpreted thephrase, we recently referred to the ÃÃBurlingtonÄÄ construction of"additional evidence" in ÃÃBernardsvilleÄÄ, 42 F.3d at 161, where weupheld a district court's decision to exclude evidence ascumulative and an improper embellishment of testimony previouslygiven at an administrative hearing. ÃÃSee alsoÄÄ ÃÃObertiÄÄ, 995 F.2d at1220 (court makes fact findings in IDEA case not only onadministrative record, but also on any new evidence presented byparties); ÃÃWexler v. Westfield Bd. of Educ.ÄÄ, 784 F.2d at 181(court must independently review the record, hear any requestedadditional evidence, and apply the preponderance standard). Other courts of appeals have followed ÃÃBurlingtonÄÄ's lead inconstruing section 1415(e)(2)'s "additional evidence" clause,ÃÃsee, e.g.ÄÄ, ÃÃOjaiÄÄ, 4 F.3d at 1473 (upholding district court'sadmission of additional evidence concerning relevant eventsoccurring subsequent to the administrative hearing), although theinterpretation is not unanimous. ÃÃSeeÄÄ ÃÃMetropolitan Gov't ofÔØ'0* ( °°ÔNashville v. CookÄÄ, 915 F.2d 232, 234 (6th Cir. 1990) ("Insofar as[the language in ÃÃBurlingtonÄÄ] suggests that additional evidence

13

isadmissible only in limited circumstances, such as to supplementor fill in the gaps in the evidence previously introduced, wedecline to adopt the position taken by the First Circuit."); ÃÃseealsoÄÄ ÃÃMurrayÄÄ, 51 F.3d at 930©31 & n.15.

Á``ÁAlthough we make no explicit interpretation of section1415(e)(2)'s "additional evidence" clause, even underÃÃBurlingtonÄÄ's restrictive approach a district court first mustevaluate a party's proffered evidence before deciding to excludeit.  Moreover, while the purpose of the ÃÃBurlingtonÄÄ constructionis to "structurally assist[ ] in giving due weight to theadministrative proceeding, as ÃÃRowleyÄÄ requires," ÃÃBurlingtonÄÄ, 736F.2d at 790, the court of appeals did not say that a districtcourt arbitrarily or summarily could exclude additional evidencesubmitted by a party in pursuit of that deference.  On thecontrary, the examples that ÃÃBurlingtonÄÄ provided of additionalevidence that should ÃÃnotÄÄ be admitted were all types of evidencethat courts might decide to exclude in a conventional civilproceeding.  For instance, the court stated that the additionalevidence clause "does not authorize witnesses at trial to repeator embellish their prior administrative hearing testimony; thiswould be entirely inconsistent with the usual meaning of`additional.'"  ÃÃId.ÄÄ  Even while making this statement, though,the court stressed that it would not be wise to devise a hardªand©fast rule:Ô'0* ( (°°ÔŒÐÐÐÂ°``ÂWe decline to adopt the rule urged bydefendants that the appropriate constructionis to disallow testimony from all who did, orcould have, testified before theadministrative hearing.  We believe

14

that,although an appropriate limit in many cases, arigid rule to this effect would unduly limit acourt's discretion and constrict its abilityto form the independent judgment Congressexpressly directed.  A salient effect ofdefendants' proposed rule would be to limitexpert testimony to the administrativehearing.  Our review of the cases involvingthe Act reveals that in many instances thedistrict court found expert testimony helpfulin illuminating the nature of the controversyand relied on it in its decisional process. Å°ÅThere could be some valid reasons for notpresenting some or all expert testimony beforethe state agency.ÐÐÆx`ÆÐÐÃÃId.ÄÄ at 790©91.Å°ÅÁ``ÁThus, the ÃÃBurlingtonÄÄ court stated that certain evidencemay be excluded under IDEA judicial review out of deference tothe administrative proceedings.  The court, however, declined todevise a bright©line rule, choosing instead to leave "thequestion of the weight due the administrative findings of fact"to the discretion of the trial court.  ÃÃId.ÄÄ at 791©92.  Othercourts, including ours, likewise have condoned the exclusion ofadditional evidence submitted by the parties to an IDEAproceeding when, for a particular reason, the court properlycould exclude the evidence. ÃÃSee, e.g.ÄÄ, ÃÃBernardsvilleÄÄ, 42 F.3d at161 (upholding exclusion of evidence as cumulative and improperembellishment of testimony previously given at administrativehearing).Á``ÁIt is regularly held that the question of whatadditional evidence to admit in an IDEA judicial reviewÔØ'0* ( (°°Ôproceeding, as well as the question of the weight due theadministrative findings of fact, should be left to the discretionof the trial court.  ÃÃSee,

15

e.g.ÄÄ, ÃÃCarlisleÄÄ, 62 F.3d at 527;ÃÃBernardsvilleÄÄ, 42 F.3d at 161; ÃÃObertiÄÄ, 995 F.2d at 1219;ÃÃBurlingtonÄÄ, 736 F.2d at 791©92.  As appellants note, Congress'central goal in enacting the IDEA was to ensure "that each childwith disabilities has access to a program that is tailored to hisor her changing needs and designed to achieve educationalprogress."  Appellants' br. at 11.  Children are not staticbeings; neither their academic progress nor their disabilitieswait for the resolution of legal conflicts.  While a districtcourt appropriately may exclude additional evidence, a court mustexercise particularized discretion in its rulings so that it willconsider evidence relevant, non©cumulative and useful indetermining whether Congress' goal has been reached for the childinvolved.  Consequently, on the remand the district court shoulduse this standard in determining whether to admit the proferredadditional evidence, ÃÃi.e.ÄÄ, would the evidence assist the court inascertaining whether Congress' goal has been and is being reachedÔ‰?°Ôfor the child involved.Ö›x°$= Because we vacate the judgment of the district court andremand the case for the district court's evaluation of additionalevidence, which may lead to the admission of some, none, or allof the evidence submitted, it is not necessary for us to addressappellants' claim that the district court denied them a fairopportunity to argue their case. The remand necessarily resolvesthat issue. ›ÖÁàèìÁD.  ÃÃFUHRMANN V. EAST HANOVER BOARD OF EDUCATIONÄÄƒÔ@0* ( (°°ÔŒÁ``ÁWe consider one final matter with respect to the"additional evidence" clause of the IDEA.  In deciding to rule onthe merits of appellants'

16

IDEA claims without evaluating oraccepting their offer of additional evidence, the district courtrelied on our holding in ÃÃFuhrmannÄÄ, 993 F.2d 1031, in addition torelying on the Supreme Court's decision in ÃÃRowleyÄÄ. ÃÃSeeÄ Mem. at11©12. The district court cited ÃÃFuhrmannÄÄ for the propositionthat "the court cannot assess the adequacy of a student'splacement `at some later date when one has the benefit of thechild's actual experience,'" Mem. at 11 (quoting ÃÃFuhrmannÄÄ, 993F.2d at 1040), but instead "must measure the adequacy of aneducational program at the time it was offered to the student." Mem. at 12 (citing ÃÃFuhrmannÄÄ, 993 F.2d at 1040). As theappellants "proposed that they be allowed to supplement therecord with additional evidence which was not available in 1992,"the district court chose to address the merits of their casewithout evaluating or admitting that evidence because in the eyesof the district court, doing so would be "second©guess[ing] thejudgment of the administrative panel with evidence that was notbefore the panel when it made its decision." Mem. at 12. Thecourt proceeded to "confine its analysis to the evidence that wasbefore the panel in 1992, and . . . give due deference to the[administrative] panel's findings." ÃÃId.ÄÄ In order to addressÔ`"0* ( (°°Ôcompletely appellants' claim for relief, we must revisit theÔ‰? Ôevidentiary issues we considered in ÃÃFurhmannÄÄ.ÖE $= Appellants try to minimize the applicability of ÃÃFuhrmannÄÄ tothis case by pointing out that the major thrust of their claim is"for a prospective determination of eligibility for services," appellants' br. at 20. They continue:ÐÐÂ°``ÂIt may well be unfair to force a

17

district topay reimbursement where it correctlyidentified the child as eligible and developedan IEP reasonably calculated to produceprogress, even if, in hindsight, progress didnot actually occur. But there is nothingunfair about parents trying to convince acourt that their child should be declared ©©at least from that point forward ©© to have adisability, and nothing irrelevant aboutevidence that brings the court up to date onwhether indicia of a disability are present.Æx`ÆÐÐAppellants' br. at 20©21. Although appellants try to convince usthat we need not address ÃÃFuhrmannÄÄ's effect on their claims, ÃÃseeÄÄbr. at 21 n.10 ("[T]he Court need not decide these points."),appellants, as they admit, did include claims for reimbursementin their complaint in the district court. Br. at 20 n.9. Thus,we must address ÃÃFuhrmannÄÄ's holding to see if what appellants seekis truly the "unfair" use of hindsight in judging the schooldistrict's decision regarding M.'s eligibility for specialeducation.EÖÁ``ÁIn ÃÃFuhrmannÄÄ, we addressed the claim of parents of achild with disabilities for reimbursement for two years ofprivate schooling for their son. The parents contended that theindividual education programs that the school district hadoffered to the child were inappropriate and thus violated theÔ‰?ðÔIDEA.ÖÈx0ð¨$= Appellants again try to distinguish their case from ÃÃFuhrmannÄÄ by pointing out that "[u]nlike the [appellants] here,the parents in ÃÃFuhrmannÄÄ were not seeking a determination ofeligibility for special education, or a finding concerning theprogram that would be appropriate for their child in the future." Appellants' br. at 19. We decline, however, to

18

draw such aÔØ'0* ( (°°Ôbright line between the appropriateness of taking additionalevidence in an IDEA judicial review proceeding when thereasonableness of an IEP is at issue and taking such evidence ina proceeding where the initial determination of eligibility forspecial education is being litigated.  However, we do note thatCongress' primary purpose in enacting the IDEA did seem to be theassurance of access to special education services for childrenwith disabilities.  ÃÃSeeÄÄ 20 U.S.C. ÀÀ 1400(c) ("It is the purposeof this chapter to assure that all children with disabilitieshave available to them . . . a free appropriate public educationwhich emphasizes special education and related services designedto meet their unique needs[.]").  But we also note that in ÃÃW.B.v. MatulaÄÄ, No. 95©5033, we recently held that the IDEA allows therecovery of damages as rather broadly defined.  Slip op. at 16ª17.  Obviously, a court would have to exercise great care inadmitting after©acquired evidence in a damages action,particularly one such as this case, which involves a claim forpunitive damages.  Thus, while we are not drawing bright lines,we do observe that a more liberal approach might be appropriatein a case involving a claim for remedial educational relief ascontrasted to a damages action.ÈÖ  Neither party sought to introduce additional evidence inÔðÀ0* ( (°°ÔÃÃFuhrmannÄÄ.  993 F.2d at 1034 n.3.  The issue, instead, was theweight that the district court should give to evidence already inthe administrative record regarding the child's progress inprivate school (evidence amassed after the school district'sdecision regarding the IEP but before the parents sought judicialreview).

19

ÃÃId.ÄÄ at 1039.  As appellants note, we held in ÃÃFuhrmannÄÄthat the district's liability hinged upon whether its proposedprogram for the child was, at the time it was offered,"reasonably calculated" to benefit the child.  Appellants br. at19. Appellants interpret our ruling as follows:ÐÐÐÐÂ°``ÂThe Court declined, therefore, to adopt a ruleunder which the district would have beenfinancially penalized for an IEP that, whileapparently appropriate at the time it wasdeveloped, turned out in hindsight to beinadequate.  Accordingly, the Court held,evidence of the child's subsequent educationalprogress (or lack thereof) could be consideredÔÀ0* ( °°Ôonly insofar as it bore on the issue ofwhether the IEP was appropriate when it wascreated.ÐÐÆx`ÆÐÐAppellants' br. at 20 (citing ÃÃFuhrmannÄÄ, 993 F.2d at 1040).Á``ÁAppellants' characterization of our holding in ÃÃFuhrmannÄÄis fair.  The case was unusual in that the panel authored threeseparate opinions: one opinion by Judge Garth for the court, oneconcurring opinion by Judge Mansmann, and one concurring anddissenting opinion by Judge Hutchinson.  On the matter of whatweight to give evidence not before a school district when itoriginally made the decision regarding the educational placementof a child, Judge Garth and Judge Mansmann agreed on theaforementioned holding: "[T]he measure and adequacy of an IEP canonly be determined as of the time it is offered to the student,and not at some later date."  993 F.2d at 1040. However, despiteJudge Garth's statement that "Judge Mansmann and I are incomplete agreement as to the time when we must look at the`reasonable calculation' made pursuant to ÃÃRowleyÄÄ,"

20

ÃÃid.ÄÄ, the twojudges may have come to different conclusions as to theconsequences of that holding.  While Judge Garth stated that"evidence of a student's later educational progress may only beconsidered in determining ÃÃwhether the original IEP was reasonablycalculated to afford some educational benefitÄÄ," ÃÃid.ÄÄ (emphasisadded), Judge Mansmann concluded that "evidence of what tookplace after the hearing officer rendered his decision in the fallof 1989 is not relevant in deciding whether [the child's] 1989©90placement was appropriate."  ÃÃId.ÄÄ at 1041 (Mansmann, J.,Ô'0* ( (°°Ôconcurring).  Judge Garth thus seemed to take the lessrestrictive approach, one that would admit evidence dating from atime after both the school district and the hearing officer madetheir decisions, but only in determining the reasonableness ofthe school district's original decision.  Judge Mansmann'sopinion could be read to indicate that she would not admit suchevidence at all, and the school district advances that reading. ÃÃSeeÄÄ appellee's br. at 10 n.3.Á``ÁIn light of the IDEA's purpose "to assure that allchildren with disabilities have available to them . . . a freeappropriate public education which emphasizes special educationand related services," 20 U.S.C. ÀÀ 1400(c), in addition to itsdirective to "hear additional evidence at the request of aparty," ÃÃid.ÄÄ ÀÀ 1415(e)(2), we believe that Judge Garth'sinterpretation of the statute should control the taking ofevidence on judicial review that was not before the schooldistrict when it made its initial IDEA placement decisions. Inso concluding, however, we stress that such after©acquiredevidence, such as information received through the

21

experience ofan alternative placement, should be used by courts only inassessing the reasonableness of the district's initial decisionsregarding a particular IEP or the provision of special educationservices at all.  Courts must be vigilant to heed Judge Garth'swarning that "[n]either the statute nor reason countenance`Monday Morning Quarterbacking' in evaluating the appropriatenessof a child's placement."  993 F.2d at 1040. Ô'0* ( (°°ÔŒÁ``ÁThe dangers inherent in this process of second©guessingthe decisions of a school district with information to which itcould not possibly have had access at the time it made thosedecisions are great.  As appellants recognize, it indeed would beunfair "to adopt a rule under which [a] district would [be]financially penalized for an IEP that, while apparentlyappropriate at the time it was developed, turned out in hindsightto be inadequate."  Appellants' br. at 20.  Our recent holding inÃÃCarlisleÄÄ, 62 F.2d at 534, is not inconsistent with theseconclusions, for in that case we merely emphasized theprospective nature of judging the appropriateness of a particularIEP, and cited ÃÃFuhrmannÄÄ for the prospect that a student'ssubsequent failure to make progress in school does notretrospectively render an IEP ÃÃperÄÄ ÃÃseÄÄ inappropriate. In ÃÃCarlisleÄÄ,we did not address specifically the issue of how to use afterªacquired evidence in assessing the reasonableness of an IEP ©© ajudicial process that, by the very nature of judicial review,must occur after the formulation of the educational program.Á``ÁIn remanding this case to the district court, then, wehold that it was not within that court's discretion to

reject appellants' offer of additional evidence without even evaluating it for its admissibility. However, we also note that, because at least some of appellants' proffered additional evidence was acquired after the school district's decision regarding M.'s need for special education, the district court will need to examine such evidence carefully. Such evidence may be considered only "with respect to the 'reasonableness' of the district's decision at the time it was made. Of course, this caveat does not mean that the court cannot exclude evidence that could have been available when the school district made its decision."

## E. THE PREEMPTIVE EFFECT OF THE IDEA

Finally, appellants contend that the district court erroneously dismissed their additional statutory claims as "preempted" by the IDEA. We agree.

Section 1415(f) of the IDEA states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C. §§ 790 et seq.], or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f). In its Memorandum Opinion, the district court interpreted this section of the IDEA to mean that "parents must first challenge [an] educational program under the IDEA before

they may pursue a civil action alleging additional causes of action."  Mem. at 10-11.  The court thereafter concluded that the appellants' additional statutory claims were "clearly pre-empted by §§ 1415(f)" and therefore should be dismissed.  *Id.* at 11.  The district court's dismissal of appellants' additional statutory claims was a legal determination over which we exercise plenary review.  *Carlisle*, 62 F.3d at 526; *Fuhrmann*, 993 F.2d at 1033.  While section 1415(f) requires a party to exhaust the IDEA's administrative remedies before pursuing other claims, the section makes clear that the IDEA is not the exclusive avenue through which children with disabilities can assert claims for an appropriate education.  *W.B. v. Matula*, slip op. at 14-15; *Hayes v. Unified Sch. Dist.*, 877 F.2d 809, 812 (10th Cir. 1989); *Board of Educ. v. Diamond*, 808 F.2d 987, 995 (3d Cir. 1986).  Indeed, Congress amended the IDEA in 1986 to include section 1415(f) in response to the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457 (1984), which held that the IDEA was the exclusive statute through which a disabled child could obtain relief.  *See* The Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372 § 3, 100 Stat. 796, 797 (1986).  Section 1415(f) thus clarified Congress' intent with regard to the preemptive effect of the IDEA.  *Diamond*, 808 F.2d at 995.  As we recently stated, "Section 1415(f) was . . . enacted to `reaffirm, in light of [*Smith*], the viability of section 504, 42 U.S.C. § 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children.'"  *Matula*, slip

24

op. at 14©15 (quoting H.R. Rep. No. 99ª296, 99th Cong., 1st Sess. 4 (1985)); ÃÃsee alsoÄÄ ÃÃMrs. W. v.TirozziÄÄ, 832 F.2d 748, 754©55 (2d Cir. 1987).Á``ÁThus, the district court erred in dismissing theappellants' additional statutory claims as preempted by the IDEA. Ô'0* ( (°°ÔWhile the school district states that "the lower court appears tohave overlooked Section 1415(f) of the IDEA" in so ruling,appellee's Br. at 18, it claims that "the record simply does notsupport the maintenance of a cause of action against appellees onany other theory."  ÃÃId.ÄÄ But even though this assertion may beestablished on remand, it was not within the district court'sdiscretion to dismiss the appellants' claims without addressingtheir merits.  Accordingly, we will vacate the order of thedistrict court dismissing appellants' additional statutoryÔ‰?Ôclaims.ÃÃÄÃÃÔ‰?0ÔÁàhì#ÁIII. CONCLUSIONÄÄƒÁ``ÁFor all the reasons detailed above, we will vacate thedistrict court's order entered September 27, 1994.  We willremand the case to the district court for the evaluation and,perhaps, depending on that evaluation, the taking of additionalevidence on the IDEA claim and for further proceedings consistentwith this opinion.  Costs shall be allowed the appellants.