**JONATHAN G., a minor, by his parents and natural guardians, MICHAEL G. and Sondra G., in their own right, Plaintiffs,**

v.

**LOWER MERION SCHOOL DISTRICT, Defendant.**

No. 96–CV–2121.

United States District Court, E.D. Pennsylvania.

March 10, 1997.

**414**

Philip R. Detwiler, Philip R. Detwiler & Assoc., P.C., Blue Bell, PA, for Plaintiffs.

Kenneth A. Roos, Michelle Haris Kichline, Wisler, Pearlstine, Talone, Craig, Garrity & Potash, L.L.P., Blue Bell, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

## INTRODUCTION

Plaintiffs Michael and Sondra G. have brought this action on their own behalf and that of their son Jonathan G., appealing the decision of the Pennsylvania Special Education Appeals Panel ("Appeals Panel" or "Panel"), under the Individuals with Disabilities Education Act ("IDEA"), as codified at 20 U.S.C. § 1400 et seq. (West 1990 & Supp. 1996).[1] Nevertheless, we have affirmed the decision of the Appeals Panel.

## BACKGROUND

Jonathan G. is a student with learning disabilities as defined by IDEA, and is currently attending school in the Lower Merion School District ("Lower Merion"). In the 1993–1994 school year, while in fifth grade, Jonathan attended a self-contained learning support class.[2] In the subsequent year, he attended a resource room learning support program. Both placements were approved by his parents although they also purchased private educational services for him.

In April 1995, Lower Merion developed a Comprehensive Evaluation Report ("CER") and Notice of Recommended Assignment ("NORA"), as well as an Individualized Educational Program ("IEP") for Jonathan.[3] Based on these reports, Lower Merion proposed an educational placement for Jonathan in an inclusive setting with regular education students in seventh grade. Nevertheless, Mr. and Mrs. G. rejected the inclusion-based IEP that was proposed on April 20, 1995 and obtained independent evaluations during July and August 1995.

Since the disagreement between Lower Merion and Jonathan's parents was not resolved at a pre-hearing conference on September 7, 1995, due process hearings were held before a Special Education Hearing Officer. The Hearing Officer, in a decision dated December 31, 1995, directed the implementation of the School District's proposed IEP and denied the parents' request for reimbursement of their expenses for the additional educational services. Subsequently, the parents appealed the decision of the Hearing Officer and the Appeals Panel affirmed the Hearing Officer's decision in all respects. Plaintiffs then brought this action to challenge the Appeals Panel's decision, raising two primary issues for our consideration, namely, the adequacy of Jonathan's placement, and their entitlement to reimbursement for the additional educational services they obtained.[4] Nevertheless, after careful evaluation of the record presented to us, we affirm the decision of the Appeals Panel.

## DISCUSSION

### I. Standard of Review

In reviewing a claim under the IDEA, this court is required to "receive the records of the administrative proceedings, hear additional evidence at the request of a party" and base its decision on the "preponderance of the evidence." 20 U.S.C. § 1415(e)(2).[5] The

---

1. IDEA provides that state agencies which receive assistance shall establish procedures to ensure that learning disabled children receive adequate education. 20 U.S.C. § 1415(b). The parents are entitled to a due process hearing, see id. at § 1415(b)(2), which in Pennsylvania occurs before a Hearing Officer, and then an appeal to an educational agency, see id. at 1415(c), which in Pennsylvania is the Special Education Appeals Panel.

2. Based on the discussion in the transcript and the parties' briefing, it seems that a self-contained learning support class can be best described as one in which the student is educated with other children in need of special education.

3. The IDEA provides that states shall ensure that there is an individualized annual evaluation of the programs for disabled children. 20 U.S.C. § 1413(a)(11).

4. The parents do not challenge Lower Merion's compliance with the procedures in the IDEA and therefore we do not discuss that issue.

5. The parties have agreed to try this matter based on the record created before the Hearing Officer.

court is also required to give "due weight to the administrative proceedings," *Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982), although the court must consider the findings of the administrative tribunal carefully, and may accept or reject such findings. *Susan N. v. Wilson School Dist.*, 70 F.3d 751, 758 (3d Cir.1995). Finally, the court must be careful not to substitute its judgment about proper education methods for that of the state educational authorities. *Rowley*, at 207, 102 S.Ct. at 3051.

## II. *Jonathan's Placement*

Congress' intent in enacting IDEA was to ensure, to the maximum extent possible, that children with disabilities are educated with those who are not disabled. *See* 20 U.S.C. § 1412(5)(B). Indeed, IDEA provides that children with disabilities should only be removed from a regular education environment when the disability is such that education in that environment is not feasible, even with the use of supplementary aids and services. *Id.* This requirement is commonly referred to as IDEA's "mainstreaming requirement."

In interpreting IDEA's mainstreaming requirement, the Third Circuit has fashioned a two-pronged test to evaluate the propriety of a disabled child's inclusion in a regular classroom. According to this test, the court must determine (1) if the child can be educated satisfactorily in a regular classroom with supplemental aids and services and (2) whether the child's school has included the child in inclusive school programs to the maximum extent appropriate. *Oberti v. Board of Education of Clementon*, 995 F.2d 1204, 1215 (3d Cir.1993).

In many cases, the parents of a disabled child argue in favor of mainstreaming with the school district recommending a more restrictive placement. In this case, however, Lower Merion has proposed an inclusive placement but Jonathan's parents have indicated that they prefer that Jonathan receive self-contained instruction. The parents have therefore challenged the propriety of Jonathan's placement in an inclusive classroom setting.

Mr. and Mrs. G. have claimed that both the Hearing Officer and the Appeals Panel failed to appropriately evaluate plaintiffs' expert evidence. In particular, plaintiffs claim that the Hearing Officer did not evaluate the testimony and evidence of plaintiffs' experts at all, and that the Appeals Panel accepted only the evidence presented by Lower Merion, incorrectly assuming that it was obligated to affirm the Hearing Officer's decision. Plaintiffs further claim that had their evidence been properly evaluated, it would clearly have shown that Jonathan requires a self-contained placement. Plaintiffs also state that all of their evidence was based on objective test results while Lower Merion's evidence was largely based on anecdotal information, and is therefore, presumably, not as convincing as plaintiffs' evidence. Finally, plaintiffs claim that Lower Merion failed to diagnose the cause of Jonathan's impairment and that this failure shows that their proposed educational program cannot possibly be properly tailored to suit Jonathan's needs.

In response, Lower Merion claims that there is no evidence that either the Hearing Officer or the Appeals Panel failed to adequately consider plaintiffs' evidence. Furthermore, Lower Merion argues, the Hearing Officer and the Appeals Panel do not need to give detailed explanations of the reason(s) for their decision. In any event, Lower Merion asserts, the Hearing Officer and the Appeals Panel properly concluded that Lower Merion's witnesses, who saw Jonathan on a regular basis, were more credible and better able to assess Jonathan's needs than the parents' experts who observed Jonathan for limited periods of time.

Since the parties have raised issues concerning both the Hearing Officer's decision and that of the Appeals Panel, we will examine these proceedings in greater detail below.

### A. *The Hearing Officer's Decision*

During the proceedings before the Hearing Officer, Lower Merion presented testimony from various teachers and administrators at Jonathan's school, including Betsy Granite, the school psychologist; Nikki LaRussa, Jonathan's learning support teacher; Diane Shannon, Jonathan's former reading instruc-

tor and a reading specialist; Beth Weinstein, a speech and language pathologist that has worked with Jonathan since the second grade; and Beth Douglass a learning support teacher who co-taught Jonathan's language and math classes. The majority of the testimony from Lower Merion's witnesses focused on the fact that Jonathan had improved roughly one grade level per year and had received excellent grades. The witnesses also commented on the benefits that Jonathan would receive from being educated with non-disabled peers, namely that he would feel included and his self-esteem would increase, and he would further develop his social skills through this interaction.

The parents countered with the testimony of several persons who had evaluated Jonathan at their request, including, Dr. Slap–Shelton, a psychologist specializing in neuropsychology; Dr. H. Lee Brubaker, another psychologist; and Dr. Maxine Young an audiologist. These witnesses had evaluated Jonathan for varying degrees of time, and in their opinion, Jonathan had various physical impairments that required individualized attention, which could not be received in an inclusive classroom setting. For example, Dr. Young testified that in her opinion, Jonathan had auditory problems that impaired Jonathan's ability to hear and process information. According to Dr. Young, Jonathan needed an inclusive setting because a larger classroom environment, with the resultant noise of various students, would not allow Jonathan to adequately hear and process his teacher's verbal instruction.

In addition, Dr. Slap–Shelton diagnosed Jonathan as dyslexic, a diagnosis that apparently had not been made by Lower Merion at any point. Dr. Brubaker characterized Jonathan as very easily distracted and therefore more capable of functioning in a self-contained placement. In any event, both sides agreed that Jonathan was in need of significant help in reading, and that this problem affected all of his classwork.

Jonathan's parents also testified that he was very anxious to measure up to his peers, he often made comments indicating that he thought he was dumb because special accommodations were made for him in the class-

room, and that he spent inordinate amounts of time completing his homework assignments and studying for tests. Furthermore, they testified that they almost always helped Jonathan with his homework and that he often was unclear as to what he was required to do, often because he was unable to properly record what the teacher had stated was to be done. According to the parents, Jonathan would then become frustrated and the situation was proving to be too extremely difficult. Mr. and Mrs. G. testified that they felt that the pressure of keeping up with his non-disabled peers was too much for Jonathan and that it would be alleviated if Jonathan had a self-contained placement.

Nevertheless, the Hearing Officer did not rule in favor of the plaintiffs. Instead, his decision focused on the fact that Jonathan's teachers had testified to the progress he has made in his classes and the excellent grades he has received, and he then concluded that Jonathan could be adequately educated in an inclusive setting. He also noted the concerns Jonathan's parents had about the excessive amount of time he spent completing homework assignments and his anxiety about fitting in with his classmates, and then the Hearing Officer ordered counseling that would focus on these two problems. In addition, he ordered that Jonathan's reading level be assessed and then reassessed after six months of instruction.

### B. The Appeals Panel's Decision

The Appeals Panel first established the standard of review it would employ, stating that the Hearing Officer's findings were entitled to due deference, and that his credibility determinations were also entitled to deference unless the extrinsic evidence in the record or the entire record read as a whole compelled a contrary conclusion. *See Carlisle Area School v. Scott P.*, 62 F.3d 520, 524 (3d Cir.1995). The Appeals Panel then noted IDEA's preference for mainstreaming and then delineated the two-pronged test outlined in *Oberti*, although it only considered the first prong of the *Oberti* test, namely, whether the child can be educated satisfactorily in a regular classroom with supplemental aids and services. The Panel then noted that the

first prong required it to consider three additional factors: (a) the steps the school has taken to include the child, (b) a comparison of the educational benefits of a regular versus a segregated class, and (c) the possible negative effects of inclusion on other children in the class. *See Oberti*, 995 F.2d at 1216.

With regard to the first factor, the Panel stated that Lower Merion had appropriately included Jonathan in regular classes by providing a special education teacher in addition to the regular education teacher, and had also provided small group reading and speech and language support. With regard to the second factor, the Panel noted the progress Jonathan had made in his classes, and with regard to the third factor, the Panel concluded that it was not at issue since no one had testified that Jonathan was disruptive or in any way negatively affecting the other students.

■ The Panel then observed that in spite of the parent's assertion that they had chosen to "waive" the IDEA's mainstreaming provisions, there was no such waiver under federal law.[6] Finally, the Panel dismissed the parent's contention that Lower Merion had failed to discern Jonathan's impairment, stating instead that the proposed IEP's goals were based on behaviors and skills observed by the multi-disciplinary team that is responsible for evaluating students who fall under the parameters of IDEA, and that the IEP adequately addressed Jonathan's problems.

## C. Analysis

■ Initially, we note our agreement with the Appeals Panel's analysis of the factors delineated in *Oberti* and we do not find it necessary to repeat it. Nevertheless, we have made other observations of our own.

First, we note that the recommendations made by Drs. Young and Slap–Shelton, can be implemented in an inclusive placement. For example, Dr. Young recommends that Jonathan be given preferential seating close to the teacher and away from noisy children, that teachers speak slowly and distinctly, and that Jonathan be given additional time to complete assignments. With regard to Dr. Slap–Shelton, we observe that even though she recommends a segregated placement for Jonathan, she also included steps that Lower Merion could take should Jonathan remain in an inclusive program. In addition, she indicated while testifying that her recommendations were intended to enable Jonathan to function at an optimal level. Moreover, she admitted that it was possible for Jonathan, if he received all that she recommended, to achieve the same progress being educated in an inclusive setting as he could in a self-contained placement.

Second, we note that in arguing that Lower Merion's failure to diagnose Jonathan's dyslexia proves that the school district's IEP could not possibly be appropriate, the parents failed to address the fact that many of the recommendations in the IEP mirror those of the parents' witnesses. For example, Dr. Slap–Shelton's recommendations that Jonathan be allowed to use a calculator, that he receive extra time on tests, and that he receive graphic visual instruction were already recommended in the April 20, 1995 IEP. In addition, Dr. Young's recommendations that Jonathan receive preferential seating were also part of the IEP. We therefore cannot determine as a matter of law that Lower Merion's failure to test for and diagnose Jonathan's dyslexia is fatal.

Third, contrary to the parent's assertions, Lower Merion did perform testing on Jonathan, and the proposed IEP is not based solely on anecdotal information. For example, Ms. Granite testified that Jonathan was given several tests, including, the Weschler Individual Achievement Test, a Qualitative Reading Inventory and the Woodcock Johnson Reading Mastery Test. Accordingly, after viewing the evidence in its entirety, we

---

6. The parents have chosen to pursue this argument on appeal before this court, but they fail to cite, and we cannot find, even one case that suggests that IDEA's mainstreaming requirement is intended only for the benefit of a child's parents or guardian. To the contrary, the test delineated in *Oberti* suggests otherwise, and although the parents argue that this test is only applicable when the parents are in favor of mainstreaming and the school district favors a more restrictive placement, nothing in *Oberti* suggests that its holding was intended to be limited in this manner.

conclude that an inclusive placement is appropriate.

### III. Parent's Entitlement to Reimbursement for Evaluations

■ Mr. and Mrs. G. request reimbursement by Lower Merion for the evaluations performed by their experts, as well as the costs incurred in obtaining additional educational support services. Nevertheless, we must deny plaintiffs' request because it is well-settled that reimbursement is only appropriate where the evaluations result in a change in the IEP, or there is a determination that the "IEP in question was inappropriate." *See e.g. Bernardsville Board of Education v. J.H.,* 42 F.3d 149, 157 (3d Cir. 1994). Furthermore, there was no testimony to suggest that the additional tutoring that Jonathan received was absolutely necessary, or that he would not have made reasonable educational progress without it. Accordingly, we must deny the reimbursement requests.

Finally, we deny the request by plaintiffs' attorney for fees, since plaintiffs are not prevailing parties under IDEA. *See* 20 U.S.C. 1415(e)(4)(B).

**CONCLUSION**

In accordance with the discussion above, we find that the IEP proposed by Lower Merion on April 20, 1995 is appropriate for Jonathan G. We therefore decline to reimburse plaintiffs for the cost of the independent educational services and evaluations they purchased, and we also decline to award attorney's fees.

An appropriate Order follows.

#### *ORDER*

AND NOW, this 10th day of March, 1997, after considering the entire record in this case, it is hereby ORDERED that the decision of the Pennsylvania Education Appeals Panel is AFFIRMED.