**M.E. and P.E., on their behalf and on behalf of their son, C.E., Plaintiffs,**

v.

**The BOARD OF EDUCATION FOR BUNCOMBE COUNTY, a/k/a Buncombe County Public Schools, Defendant.**

No. Civ.1:99CV3.

United States District Court, W.D. North Carolina, Asheville Division.

Dec. 17, 1999.

Peter W.D. Wright, Deltaville, VA, for plaintiffs.

Cynthia S. Lopez and Christopher Z. Campbell, Asheville, NC, for defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment. For the reasons stated herein, the Court denies the Plaintiff's motion and grants that of the Defendant.

### I. PROCEDURAL HISTORY

ME and PE on behalf of CE, their autistic child, initiated this action pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et. seq.*[1] 20 U.S.C. § 1401(a)(1)(A)(i). Plaintiffs claimed the Buncombe County Board of Education (County) denied a free appropriate public education (FAPE) to their child, as required by the IDEA. 20 U.S.C. § 1401(a)(18).[2] On October 10, 1998, Administrative Law Judge (ALJ) Beecher Gray found the Plaintiffs had failed to initiate a proceeding for a due process hearing during the 60–day statute of limitations prescribed by the North Carolina Administrative Procedure Act, N.C.Gen. Stat. § 150B–23. Plaintiffs filed an administrative appeal and State Review Officer

(SRO) J. Sherwood Dunham affirmed the ALJ's decision on December 3, 1998. Having exhausted their administrative remedies, the parents brought this action pursuant to the IDEA. 20 U.S.C. § 1415(e)(2).

### II. STANDARD OF REVIEW

Section 1415(e)(2) of Title 20, United States Code, provides in pertinent part that in "any action brought under this [statute] the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." The parties here have agreed that no hearing is necessary and that the matter may be determined on the basis of the motions.

 The Supreme Court has held that a proper review of the state's determination requires a twofold inquiry. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The district court must decide: (1) whether the State complied with the IDEA's procedural requirements in developing and implementing the Individualized Education Program (IEP) for the child at issue and (2) whether the IEP is "reasonably calculated" to enable that child to receive educational benefits. *Id.*, at 206–07, 102 S.Ct. 3034. The Court also instructed reviewing courts to make "independent decision[s] based on a preponderance of the evidence." *Id.* The Fourth Circuit refined this standard in *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100 (4th Cir.1991), where it held that findings of fact by ALJ's

1. The disorder of autism is defined as a "preoccupation with inner thoughts, ... egocentric, subjective thinking lacking objectivity and connection with reality." *Dorland's Medical Dictionary* (28th ed.1994).

2. That section defines the term "free appropriate public education" as "special education and related services that—(A) have

been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title."

and hearing officers in IDEA cases "are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." *Id.*, at 105. In essence, district courts must " 'make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings.' " *Board of Educ. of Montgomery County v. Brett Y,* 155 F.3d 557 (table), 1998 WL 390553 *5 (4th Cir.1998) (quoting *Doyle,* 953 F.2d at 103). As to conclusions of law, the determinations made in the administrative proceedings are reviewed *de novo. Milford Sch. Dist. v. William F.,* 129 F.3d 1252 (table), 1997 WL 696108 (1st Cir.1997); *Dell v. Bd. of Educ., Township High Sch. Dist. 113,* 32 F.3d 1053, 1058 (7th Cir.1994). The burden of proof, however, falls on the party challenging the administrative findings. *Barnett v. Fairfax County Sch. Bd.,* 927 F.2d 146, 152 (4th Cir.1991).

## III. FINDINGS OF FACT

In August 1995, the Plaintiffs moved from Maryland to North Carolina. **Affidavit of Dr. Jane A. Stephens** *contained in* **Administrative Record.** In March 1996, PE contacted the County to advise that his four year old son had been diagnosed with autism and to request reimbursement for Lovaas [3] therapy which had been provided for the child in their home for between 35 and 40 hours per week. *Id.;* **Petitioners' First Prehearing Statement,** *contained in* **Administrative Record.** Dr. Stephens construed the letter as a referral for special education services and initiated the evaluation process, to which the Plaintiffs agreed. **Stephens Affidavit.** The parents signed a consent for the evaluation and were provided with a handbook on parental rights. *Id.*

On May 31, 1996, a meeting was held with the Plaintiffs at which his proposed placement in a preschool classroom with a TEACCH [4] special education teacher was explained. *Id.* The Plaintiffs rejected this placement and opted to continue the Lovaas program in their home. *Id.* In June 1996, the County offered to provide Extended School Year services to the child or to provide in-home services three times per week. *Id.* These services were also rejected by the Plaintiffs by letter dated July 26, 1996. *Id.;* **Petitioners' First Prehearing Statement,** *supra.* However, in September 1996, the Plaintiffs elected to receive limited services in the form of one and one-half hours of direct special education and speech therapy. **Stephens Affidavit.**

In October 1996, the Plaintiffs again asked the County to consider funding the child's Lovaas therapy. **Petitioners' First Prehearing Statement.** An IEP meeting was held in early January 1997 at which time the parents presented a draft IEP prepared at a Lovaas institution. *Id.* At a meeting held on January 28, 1997, the County proposed its IEP, made minor modifications as requested by the Plaintiffs and asked them to notify the County if the IEP was accepted because it would entail the hiring of additional staff. *Id.* In February 1997, the attorney for the County wrote to the Plaintiffs and again asked them to respond if they wished to implement the IEP. *Id.* No response was received to this letter. Plaintiffs admit that the IEP was never implemented because they rejected it. *Id.*

Thereafter, the County sent the Plaintiffs an "Invitation to Conference" letter to discuss whether the child would be placed in kindergarten. **Stephens Affidavit.**

---

3. Dr. Ivar Lovaas developed a form of treatment for autistic preschoolers. "Discrete trial teaching (DTT) is one component of the Lovaas type of [applied behavioral analysis] and involves a directive followed rapidly with a consequence based on whether the student gives the correct response." *T.H. v. Bd. of Educ. of Palatine Community Consol. Sch.*

*Dist. 15,* 55 F.Supp.2d 830 (table), 1999 WL 342317 *14 n. 8 (N.D.Ill.1999). Lovaas therapy requires one-on-one instruction, often for as much as 40 hours per week.

4. Treatment and Education of Autistic and Related Communication Handicapped Children program.

The Plaintiffs attended the meeting and asked that the child's record be sealed. *Id.* A follow-up meeting was set for June of 1997 at which time it was determined the child no longer needed special education services. *Id.* He was removed from the program and the parents were again provided with a copy of the Handbook for Parents' Rights. *Id.* On July 29, 1997, the Plaintiffs renewed their request for reimbursement for the Lovaas therapy and threatened to initiate a due process petition in the event a response was not received within ten days. *Id.* By letter of August 7, 1997, the County declined to reimburse the Plaintiffs for the full amount demanded and advised that a counteroffer could not be proposed until approval was received from the school board. *Id.* The County attorney wrote:

> Your letter states that we must respond to your offer within ten (10) days or you will proceed immediately to due process. You, of course, have the right to file a due process petition at any time, however, the reality of school systems requires that the governing board be consulted and that process takes time. If you proceed to due process, please be aware that the IDEA was reauthorized by Congress in June and the new law contains new notice provisions and provisions regarding attorneys' fees that are now in effect. I am including a copy of the law in order to provide you with notice of these provisions. In addition, the North Carolina General Assembly has amended the mediation provisions of state law and I have included a copy of that legislation.

**Exhibit E,** *attached to* **Stephens Affidavit.** The amendment to which the attorney referred concerned new notice provisions for filing a due process petition. The Plaintiffs filed a petition for due process in April 1998. *Id.*

Stephen Grabenstein represented the Plaintiffs during an undisclosed portion of these proceedings. He has acknowledged in an affidavit that he attended at least one IEP meeting with the Plaintiffs at which he was provided the Handbook of Parents' Rights. **Second Affidavit of Stephen J. Grabenstein, Esquire,** *contained in* **Administrative Record.** Inside the front cover of that book was placed an addendum which provided notification that a petition for a due process hearing must be filed within 60 days of written notice of the contested action. *Id.*

## IV. DISCUSSION

The only factual issue for resolution is whether the Plaintiffs have shown by a preponderance of the evidence that their petition for due process was timely filed. The first argument made by the Plaintiffs is that the County waived the 60–day statute of limitations. This argument is based on the language in the County attorney's letter to the effect that the Plaintiffs, "of course, have the right to file a due process petition at any time...." The entirety of the statement which is quoted above shows the attorney was responding to the Plaintiffs' threat to initiate a due process petition within ten days unless they had heard from the County. The attorney explained that the school board would not be able to approve any counteroffer within ten days and proceeded to provide Plaintiffs with copies of the provisions concerning the filing of due process petitions. Plaintiffs' argument, based on taking the comment out of context, is disingenuous at best and is rejected.

As to the factual issue of whether the petition was filed within 60 days of the August 7, 1997 letter, the undersigned finds the determination of the ALJ and SRO was correct. Thus, the only issue remaining is the legal question of which statute of limitations should be applied. The IDEA provides that parents may request an administrative due process hearing but does not contain a time period within which to do so. 20 U.S.C. § 1415(b)(2). The Fourth Circuit has determined that the absence of a limitations period in the Act does not mean no limitations period should apply to the IDEA. *Manning v. Fairfax County Sch. Bd.,* 176

F.3d 235, 237 (4th Cir.1999). Indeed, when federal law provides no statute of limitations, " 'the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim, provided that the application of the state statute would not be inconsistent with underlying federal policies.' " *Id.* (citing *Schimmel v. Spillane,* 819 F.2d 477, 482–83 (4th Cir.1987) and quoting *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 240, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985)).

█ Plaintiffs argue that under the holdings of *Manning* and *Schimmel,* the 60–day period provided in the state Administrative Procedures Act is too short and may not be applied. However, Plaintiffs do not state which analogous state limitations period should apply. *Dell,* 32 F.3d at 1059 ("**Notably, however, [the Plaintiffs] do not suggest a particular statute more analogous to the IDEA's provisions that the court should borrow. Indeed, had the defendants pressed the point, they might well have been able to prevail solely on the ground that the [Plaintiffs] had waived the use of another statute of limitations by not having suggested affirmatively a particular limitation more appropriate than the one employed by the district court.**").

In *Schimmel,* the Fourth Circuit addressed the question of the time within which an action in federal court pursuant to the IDEA should be commenced following the exhaustion of state administrative remedies. The defendant there urged the Circuit to find that Virginia's administrative procedures statute of limitations of 30 days should apply. However, the Circuit noted that many parents are unrepresented during the administrative proceedings and thus may be unable to retain an attorney and make a determination concerning the initiation of a federal action within the 30–day time frame. In response to the defendant's argument that the IDEA requires prompt resolution of such matters, the Court held "the need for speedy resolution of disputes does not outweigh the risk that a very short statute of limitations may deny parties a fair opportunity to obtain judicial review of adverse decisions rendered in administrative due process proceedings." *Schimmel,* 819 F.2d at 483.

In *Manning,* the issue was not the time within which to initiate the federal action but, as here, the time within which to petition for a due process hearing. The school did not argue that the Virginia administrative proceedings act applied but instead conceded the one year catch-all statute of limitations applied in *Schimmel* was the appropriate one. Plaintiffs, on the other hand, argued that one year was too short a period in which to require parents to petition for a due process hearing and argued for a five year statute of limitations. Thus, the *Manning* court did not address whether the 30 day period in the Virginia administrative procedures act should have been applicable; it made a choice between a one and a five year statute of limitations. "[W]e are of the opinion that the same one-year limitations period is not so prohibitively short in the administrative hearing context that it undermines the IDEA's policy of providing parents an opportunity to protect their disabled children's educational rights." *Manning,* 176 F.3d at 239.

Thus, the undersigned rejects the Plaintiffs' argument that the *Manning* decision negates the application of North Carolina's 60–day limitations period pursuant to its Administrative Procedures Act. "A statute of limitations may apply no matter whether proceedings are brought in a judicial forum or in an administrative one." *Manning,* 176 F.3d at 238. The issue, then, is whether application of that 60–day period is "so prohibitively short in the administrative hearing context that it undermines the IDEA's policy of providing parents an opportunity to protect their disabled children's educational rights." *Id.,* at 239.

Although the *Schimmel* and *Manning* courts did not enumerate the balancing factors to be considered, each appears to have followed the methodology set out in

*Amann v. Town of Stow,* 991 F.2d 929, 931–33 (1st Cir.1993): the limitation period to be borrowed should be selected after balancing the parental interest in participation, the school's interest in speedy resolution of disputes, and the child's interest in receiving educational entitlement. This case has an unusual posture because the child received the services his parents' deemed necessary; the issue is whether his parents are entitled to reimbursement. Moreover, the Plaintiffs, who rejected each proposed IEP, did not petition for a due process hearing until after the child had been determined to be ineligible for any services. Thus, the child's interest in receiving educational entitlement is not impacted.

However, the undersigned concludes that the school has a legitimate interest in the speedy resolution of disputes. The County on more than one occasion asked the Plaintiffs to advise whether they would accept the proposed IEP because acceptance would necessitate the hiring of additional staff. The inability of the school to ascertain the necessary expenditure of funds for staff impacts more than the Plaintiff's child.

Moreover, although not dispositive, the parents here are not typical. The child's father is an attorney who purports to specialize in education law. They were represented during the proceedings and their attorney has admitted the receipt of information providing notice of the 60–day deadline. The parents were actively involved in the child's education, to the point of rejecting the IEP and insisting on the therapy of their choice.

It is compelling that this case does not involve the time within which to obtain judicial review of the state administrative proceedings. Although the IDEA instructs states to make a FAPE available, it has left to the states the procedural mechanisms for putting the same in place. It was thus within the ALJ's discretion to dismiss the petition as untimely under the North Carolina APA. *L.M. v. Brownsburg Community Sch. Corp.,* 28 F.Supp.2d 1107, 1110 (S.D.Ind.1998). "Just as all deadlines throughout the administrative process are short, the review of that process also should take place within a short period of time." *Dell,* 32 F.3d at 1061 (**applying Illinois' 120–day time limitation for judicial review of administrative decision to parent's reimbursement claim under the IDEA.**). Thus, application of the North Carolina Administrative Procedures Act 60–day limitation is not inconsistent with the underlying policies of the IDEA.

> The purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem. Under [Plaintiffs'] theory, a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware. "Recovery tuition [or costs] is a remedy only if the [FAPE] guarantee has been violated, exhaustive administrative remedies have been tried before placement, and the school has been notified." ...
> While [the Lovaas therapy] may have been of great benefit to [the child], we cannot agree that a school district must reimburse a parent for unchecked educational expenses.

*Thompson v. Bd. of Special Sch. Dist. No. 1 (Minneapolis),* 144 F.3d 574, 579 n. 3 (8th Cir.1998) (**quoting Cindy L. Skaruppa, Ann Boyer & Oliver Edwards, *Tuition Reimbursement for Parent's Unilateral Placement of Students in Private Institutions: Justified or Not?,* 114 Educ.Law Rep. 353, 354 (West 1997)**). The Plaintiffs here seek reimbursement for therapy which they unilaterally chose and implemented during a time when there were no proceedings pending with the County.

> We, of course, recognize that the school district has the duty in the first instance to provide an appropriate IEP, and moreover, to demonstrate by a preponderance at a due process hearing that

the IEP it offered was indeed appropriate. With that foremost in mind, we must nevertheless also recognize that as a practical reality, and as a mater of procedural law of which [the child's] parents were fully apprised, the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral [choice of therapy] for which reimbursement is sought.

*Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 158 (3rd Cir.1994) (footnote omitted); *accord, Lewisville Indep. Sch. Dist. v. Brooke P.*, 16 Educ. for the Handicapped Law Rep. 1313, 1315–16 (E.D.Tex.1990) (parents' failure to request due process hearing constitutes waiver of right to reimbursement for cost of extended school year services prior to initiation of due process proceedings); *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3rd Cir.1999). Thus, the undersigned cannot conclude that application of North Carolina's 60–day period is "so prohibitively short in the administrative hearing context that it undermines the IDEA's policy of providing parents an opportunity to protect their disabled children's educational rights." *Manning, supra.*

## V. ORDER

IT IS, THEREFORE, ORDERED that the Plaintiffs' motion for summary judgment is hereby DENIED; and

IT IS FURTHER ORDERED that the Defendant's motion for summary judgment is hereby GRANTED.

A Judgment dismissing this case in its entirety is filed herewith.